LEE TURZILLO CONTRACTING CO., APPELLEE, *v.* CINCINNATI METROPOLITAN HOUSING AUTHORITY; FRANK MESSER & SONS, INC., APPELLANT.

[Cite as Lee Turzillo Contracting Co. v. Cin. Met. Housing Authority, 10 Ohio St. 2d 5.]

6

(No. 40140—Decided March 29, 1967.)

*Mr. Don Burkholder* and *Mr. Fred H. Zollinger*, for appellee.

*Messrs. Taft, Stettinius & Hollister, Mr. Nicholas L. White* and *Mr. David W. Matthews*, for appellant.

SCHNEIDER, J.   Jurisdiction of this appeal was accepted for the reason that the operative effect of the controlling legislative enactments, although of long standing, has never received

more than the cursory attention of this court. See *State, ex rel. Nixon,* v. *Merrell,* 126 Ohio St. 239; 127 Ohio St. 72.

Portions of the statutes (in effect prior to amendments effective September 30, 1963) pertinent to the issues here involved and to their resolution read as follows:

"Section 1311.26. Any subcontractor . . . who has performed labor or furnished material, . . . who is performing labor or furnishing material, . . . or is about to perform labor or furnish material, . . . for the construction . . . of . . . [a] public building provided for in a contract between . . . [a] public authority and a principal contractor, and under a contract between such subcontractor . . . and a principal contractor . . . at the time of beginning to perform such labor . . . or at any time, not to exceed four months from the performance of the labor or the delivery of the . . . material, may file with the [public authority] . . . a sworn and itemized statement of the amount and value of such labor performed, and to be performed, [and] material . . . furnished . . . ."

"Section 1311.28. Upon receiving the notice required by Section 1311.26 of the Revised Code, such . . . public authority . . . shall detain in . . . [its] hands all subsequent payments from the principal [contractor] . . . to secure such . . . [claim]."

"Section 1311.31. The [public authority], . . . upon the receipt of the statement referred to in Section . . . [1311.26] of the Revised Code, shall, or the lien claimant [subcontractor] . . . in the name of such . . . [public authority] may, furnish the principal contractor . . . with a copy thereof, within five days after receiving it. If such principal [contractor] . . . fails within five days after such receipt by him, to notify, in writing, such . . . [public authority] of his intention to dispute such claim, he has assented to its correctness. Thereupon such subsequent payment shall be applied by such . . . [public authority] pro rata, upon such claim, and the amounts, *when due,* of such claim or estimates as have been meanwhile filed by other subcontractors, . . . and assented to or adjusted as provided for in Sections 1311.01 to 1311.68, inclusive, of the Revised Code . . . ."

"Section 1311.32. If within five days after his assent to . . . any claim, a head contractor . . . fails to pay to the subcon-

tractor . . . the amount thereof and costs incurred, the . . . [public authority] *when due*, shall pay the whole or a pro rata amount thereof, as provided in Sections 1311.30 and 1311.31 of the Revised Code, out of payments subsequently falling due. On . . . [its] failure to do so, within ten days thereafter, the subcontractor . . . *when due*, may recover against the . . . [public authority] in an action for money had and received, the whole or a pro rata amount of his claim or estimate, not exceeding in any case the balance due to the principal contractor." (Emphasis supplied.)

In granting summary judgment against Messer on its finding that Messer's letter of notice did not express an "intention to dispute" Turzillo's claim, the trial court necessarily considered that single fact as constituting, under Sections 1311.31 and 1311.32, Revised Code, a complete truncation of all of Messer's rights against Turzillo. This view is entirely too severe upon the party against whom the statute was employed, and its liberality in favor of the party benefited places the law far beyond the reach of the purpose sought to be accomplished.

We regard the statutes under consideration as affording a species of garnishment to protect the subcontractor against the risk of loss of the payments properly due him should they reach his principal contractor in whose hands they may be subject to the latter's creditors or to his own caprice. (It is here noted that the general statutes relating to attachment and garnishment [Section 2715.01 *et seq.*, Revised Code] would not provide the remedy apparently intended by the Legislature in enacting Section 1311.26 *et seq.*, Revised Code. The former are generally applicable upon a suggestion of the contract debtor's fraudulent intent to hinder the collection of the debt by absence or abscondment, and, in all but several instances, require a bond in double the amount of the property to be seized. Manifestly, they would not be adequate to protect a construction subcontractee under a contract which ordinarily provides for periodic payments as the work progresses.)

The conclusion we reach is required if equal weight is to be accorded to every feature of the statutes and if conflict is to be avoided and a balance maintained between two precepts, viz., that remedial laws, on the one hand, are to be liberally construed

and that statutes purporting to confer a substantive right in derogation of common law, on the other, will be resolved against one claiming their benefits. *Robert V. Clapp Co.* v. *Fox*, 124 Ohio St. 331, 178 N. E. 586; *American Guaranty Co.* v. *Cliff Wood Coal & Supply Co.*, 115 Ohio St. 524, 155 N. E. 127; *Sabol* v. *Pekoc*, 148 Ohio St. 545, 553, 76 N. E. 2d 84; *Penoyar* v. *Kelsey*, 150 N. Y. 77, 44 N. E. 788.

It is not to be ignored that Section 1311.26, Revised Code, authorizes the subcontractor, *even before the performance of the work*, to actuate the procedure culminating in Section 1311.32, Revised Code, by filing with the owner "a sworn and itemized statement of the amount and value" of the work "performed, and to be performed." In Section 1311.28, Revised Code, this statement is referred to as a "notice," but also, in that and subsequent sections, alternatively as a "claim" or a "statement." The net effect of Sections 1311.26 and 1311.28, Revised Code, taken together, constitutes a "stop notice" to the owner (*Tile Wholesalers and Importers, Inc.*, v. *Ruppert*, 125 N. J. L. 597, 17 A. 2d 607) and a form of assignment or subrogation regulated by statute (*L. W. Blinn Lumber Co.* v. *Pioneer Drainage District*, 50 Cal. App. 364, 195 P. 750; *Diamond Match Co.* v. *Silberstein*, 165 Cal. 282, 131 P. 874). The subcontractor secures an assignment pro tanto of the money remaining due from the owner to the prime contractor and the right to control and direct its payment to himself. *Bates* v. *County of Santa Barbara*, 90 Cal. 543, 27 P. 438.

From the time of the receipt of the "notice," the owner cannot safely pay any amount owing to the principal contractor until the amount claimed to be due the subcontractor is fixed. Therefore, the office of subsequent Section 1311.31, Revised Code, is to provide the method for determining the extent of the fund "assigned" or the amount of moneys to which the subcontractor is entitled. But the prime contractor is given the opportunity to dispute either an unreasonable claim or an asserted excess over the agreement between him and his subcontractor.

If, either by way of reply or by the failure of a timely reply, the principal contractor fails to manifest "his intention to dispute such claim, he has assented," not to the payment of

the statement or the claim, but "to its correctness." Thereupon, the owner must apply any subsequent payment falling due to the principal contractor upon the correct claim, either as assented to in its original form or as adjusted, *"when due."* This is the cumulative and sole purport of the language of the second sentence of Section 1311.31, Revised Code, which is substantially repeated in the first sentence of Section 1311.32, Revised Code, and of the repetitive use of the phrase, "when due," in both those sections. Therefore, it seems inescapable that the subcontractor is not entitled to recover the amount due him in the direct action against the owner, as provided by Section 1311.32, Revised Code, until both the correctness of the claim has been established and *the claim is due,* that is, the work has been actually and satisfactorily performed in accordance with his contract, or payment has been earned.

A contrary rule would be unconscionable in a case where the statement is filed with the owner before the work has commenced. The principal contractor would necessarily be forced to dispute the claim, even though the amounts and values of the various items were correctly stated, to protect himself against a subsequent default in performance on the part of the subcontractor. This is an absurd consequence, not fairly within the range of legislative intent and any construction which necessarily produces that result should be rejected. *Moore* v. *Given,* 39 Ohio St. 661. Moreover, we see no valid reason to adopt a contrary rule in the instant case simply because the statement was filed after the subcontractor left the job and filed his claim for work performed rather than for work to be performed.

As stated in oral argument before this court, Messer does not dispute the amount or value of Turzillo's claim. If Turzillo is to be paid at all, it is entitled to the amount originally claimed, and for which judgment was awarded. The real issues are whether Turzillo's performance is in accord with its bargain or whether, through no fault of its own, it was prevented from making full performance. Those issues may be raised, at least by the owner (Metropolitan) who has a vital interest in the proper execution of the work under the principal contract.

Our decision is neither at variance with the spirit of the statutes, whose "principal object . . . is to provide security for

a class of persons whose claims gradually accumulate from day to day, and who can not protect themselves in any other way" (*Clark & Co.* v. *Parker,* 58 Iowa 509, 12 N. W. 553) nor with the spirit of the authorities.* The subcontractor, to "the extent of his demand, takes the place of the contractor, so that, if the owner, as against the latter, can withhold the payment of the moneys earned, he can do so, in like manner, against the demands of the former. The test is, whether a suit for the money in question will lie by the [general] contractor against the owner." *Reeve* v. *Elmendorf,* 38 N. J. L. 125, 130; *Stone Post Co.* v. *Corcoran,* 80 N. J. L. 549, 77 A. 1031, 1032.

However, if that were the sole test, all the foregoing would be *obiter dicta* and without effect in this appeal for the reason that Metropolitan attempted to raise the defense of failure of performance in the trial court but appealed from that court's adverse judgment only as far as the Court of Appeals. Therefore, the judgment of affirmance by that court is determinative of Turzillo's right to the moneys due on Messer's contract, unless Messer is the real party in interest in the controversy. We think that it is, both on reason and upon the authority of the last sentence of paragraph three of the syllabus in *State, ex rel. Nixon,* v. *Merrell,* 126 Ohio St. 239, to the effect that the owner is a mere stakeholder in cases of this kind. In the second re-

---

*Attention has been directed to three Ohio cases (*Inter-City Equipment Corp.* v. *Mardigian,* 114 Ohio App. 401, *Fox* v. *Rehsteiner,* 18 C. C. 610, and *Busse* v. *Voss,* 13 Weekly L. B. 542) which would appear to be overturned by our decision in this case.

However, neither paragraph of the syllabus of *Inter-City* is inconsistent with the instant case when read in the light of the facts. It was there *stipulated* that the only question before the court "was the amount owing from defendants [owner and principal contractor] to plaintiff [materialman]."

Similarly, in *Busse,* the controversy was over the amount due. Although the owner's motion to interplead the principal contractor was denied, the court apparently recognized that the lien statutes were not dispositive of all issues between the contractor and his subcontractor because it entered judgment for the amount not controverted, but stayed execution upon that judgment until another and separate action was decided between those parties in which the owner was garnishee.

The prime question in *Fox* being resolved under a former and different version of the statutes, that case is only impliedly, and not directly, overturned by the instant case.

port of the same case (127 Ohio St. 72), the general contractor, along with other subcontractors, was permitted to be made an additional party-defendant as having an interest in the controversy and necessary to the disposition of the case.

As the prime contractor, Messer is equally interested with Metropolitan, if not more so, not only in the total execution of its general contract under which Turzillo must lodge its claim (*West Side Lumber Co.* v. *Saylor,* 8 Ohio Law Abs. 577, motion to certify overruled, 8 Ohio Law Abs. 686) but in the funds committed to the payment for the entire work. See annotation, 100 A. L. R. 128, 135; *Sinnickson* v. *Lynch,* 25 N. J. L. 317; *Wibbing* v. *Powers,* 25 Mo. 599; *Austin & N. W. R. R. Co.* v. *Rucker,* 59 Texas 587; and *Augir* v. *Warder,* 68 W. Va. 752, 70 S. E. 719, 33 L. R. A. (N. S.) 69; in which the courts observed that as a practical matter the owner, from lack of knowledge of the progress of the work or of its quality, may be unable properly to maintain a defense.

Moreover, by analogy to garnishment proceedings, the defendant in attachment (Messer) is not only a proper party to the action, but should be permitted to assert any defense it may have to the claim of the plaintiff in attachment (Turzillo). *Chilcote* v. *Conley,* 36 Ohio St. 545; *Alsdorf* v. *Reed,* 45 Ohio St. 653.

Under the statutes here involved, Turzillo acquired no right to have the moneys in the hands of Metropolitan (and due to Messer) applied to its claim against Messer until the latter has the opportunity to assert any defense it may have to Turzillo's claim to those moneys, except as to the correctness of the amount and value of the claim, which was all that it assented to by failing to express an intention to dispute and which it does not, in fact, dispute.

Accordingly, the judgments of the Court of Appeals and the Court of Common Pleas are reversed and the cause is remanded for further proceedings.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL and HERBERT, JJ., concur.

TAFT, C. J., and BROWN, J., dissent from paragraphs three, four and five of the syllabus and from the judgment.