THE STATE, EX REL. DINNEEN EXCAVATING COMPANY, INC.; GEMMA, INC. ET AL., APPELLEES, *v.* SYKES, DIR., APPELLANT, ET AL.

[Cite as State, ex rel. Dinneen Excavating Co., *v.* Sykes (1988), 40 Ohio St. 3d 84.]

(No. 87-344—Submitted April 12, 1988—Decided December 14, 1988.)

*Cavitch, Familo & Durkin* and *Ralph E. Cascarilla,* for appellee Gemma, Inc.

*Murphey, Young & Smith* and *Glenn W. Myers,* for appellee Price Brothers Co.

*Anthony J. Celebrezze, Jr.,* attorney general, *Diane Goss Paynter* and *Richard A. Green,* for appellant.

HOLMES, J. The pertinent law is set forth in R.C. 1311.26 through 1311.32.

R.C. 1311.26 provides that any subcontractor who has performed labor or furnished material for the construction of any public building provided for in a contract may file with the owner or agent thereof (here, the director) a sworn and itemized statement of the amount and value of labor and materials furnished, stating when the last of each was furnished.

R.C. 1311.28 provides that:

"Upon receiving the notice required by section 1311.26 of the Revised Code, such owner, board, officer, public authority, or authorized clerk, agent, or attorney thereof, shall detain from the principal contractor all subsequent payments as do not in the aggregate exceed such claim or claims.

"*An owner* referred to in section 153.01 of the Revised Code *shall place such detained funds in an escrow account* as provided for under section 153.63 of the Revised Code, *to be released at such times, in such amounts, and to such persons as may be ordered by a court of competent jurisdiction* or by agreement of the principal contractor and the subcontractor, materialman, laborer, or mechanic who filed the notice provided for in section 1311.26 of the Revised Code." (Emphasis added.)

R.C. 1311.29 defines the priorities awarded when there are several claimants, such as in this case. Any claimant filing a statement pursuant to R.C. 1311.26 must notify other potential claimants by filing, within ten days of filing the R.C. 1311.26 statement, a copy of the statement with the county recorder of the county where such property is situated. The filing for record of such notice gives the subcontractor preference, as to payments subsequently due from the owner, over other subcontractors or claimants who have failed to file an R.C. 1311.26 statement prior to the date any payment is due. All claimants who have filed statements have *no* priority among *themselves*; payment is to be made on a pro-rata basis.[2]

R.C. 1311.31 provides:

"The *owner,* board, officer, or clerk, agent, or attorney thereof, *upon the receipt of the statement referred to in section 1311.26 of the Revised Code shall,* or the lien claimant, his agent, or attorney, in the name of such owner, board, or officer, may *furnish the principal contractor with a copy thereof,*

---

[2] The amounts are prorated according to the amount of the then-existing valid claim of each claimant. Also, failure of a claimant to file for record a copy of his statement with the county recorder does not affect the validity of the lien. After those lienholders with a preference (priority) have been paid, other claimants are also paid on a pro-rata basis.

86

*within five days after receiving it, together with the notice that such principal contractor must give notice of his intention to dispute such claim within ten days.* If such lien claimant performed such labor for, or furnished such material, fuel, or machinery to, a subcontractor or such principal contractor, such lien claimant shall, within ten days after the filing of such statement, furnish a copy thereof to such contractor. *If such principal contractor fails within ten days after such receipt by him to notify, in writing, such owner,* board, officer, or clerk, agent, or attorney thereof *of his intention to dispute such claim, he has assented to its correctness,* provided that within ten days after receipt by any subcontractor of a copy of such statement, such subcontractor may give such notice of such intention to dispute on behalf of such principal contractor. *Thereupon, provided all statements filed on the same improvement have been assented to, the amount detained from the principal contractor shall be applied by and payment made by such owner,* his agent, or attorney, *in the order of preference prescribed* in section 1311.29 of the Revised Code, pro rata, upon such claims on which statements have been filed. *Where more than one statement has been filed with respect to the same improvement, and one or more of such statements has not been assented to, then the amount detained shall be applied pro rata among all such lien claimants in the order of preference prescribed in section 1311.29 of the Revised Code, payment being made in the amount of their pro rata shares to all lien claimants whose statements have been assented to,* and the pro rata shares of lien claimants whose statements have not been assented to shall be detained by the owner until the dispute with respect to any such statement has been

resolved in any manner provided by law, whereupon payment in whole or in part shall be made to such lien claimants in whose favor such dispute is resolved and any remaining part of said pro rata shares shall be applied pro rata among and payment made to all lien claimants as provided in this section. Each subsequent payment falling due shall be applied among and payment made to the lien claimants as provided in this section." (Emphasis added.)

Finally, R.C. 1311.32 provides that the duty to pay lien claimants the amounts and in order of preference provided may be enforced by an action in mandamus or the subcontractor may, when such amounts are due, recover against the owner the whole claim or pro-rata share of the amount.

Appellant contends that, pursuant to R.C. 1311.28, the court of appeals should have ordered him to pay specific amounts to specific parties as the court determined to be proper. Appellant further urges that R.C. 1311.28 conflicts with R.C. 1311.31 and that the procedures set forth in R.C. 1311.28 supersede the procedures in R.C. 1311.31, citing *Lee Turzillo Contracting Co.* v. *Cincinnati Metro. Housing Auth.* (1967), 10 Ohio St. 2d 5, 39 O.O. 2d 3, 225 N.E. 2d 255.

R.C. 1311.28 does not clearly conflict with R.C. 1311.31. R.C. 1311.28 provides that whenever an owner receives notice of claims statements having been filed, he must detain the funds in an escrow account. Escrow funds are released at such times, and in such amounts, and to such persons as may be ordered by a court of competent jurisdiction, *or by agreement* of the principal contractor and the subcontractor(s).

R.C. 1311.31 provides that if the principal contractor fails to notify the owner of intent to dispute such claim,

the *correctness* of the claim is assented to. Thereafter, if all statements (claims) are assented to, the owner applies the funds held in escrow to all claimholders on a pro-rata basis.

The court of appeals, acting pursuant to R.C. 1311.31, held that because the principal contractor assented to all the claims, the owner (the director) was under a clear legal duty to apply the funds on a pro-rata basis to each of the claimholders whose claims were not disputed.

Appellant contends that R.C. 1311.28 controls and he can not release or apply any of the escrow funds without a court order, relying on *Lee Turzillo Contracting Co., supra.*

In *Turzillo, supra,* this court held, in paragraph three of the syllabus, that even though a principal contractor assents to the correctness of a claim, he does not assent to payment of the claim without satisfactory proof of performance.

Further, in paragraph five of the syllabus, the *Turzillo* decision held that where a principal contractor assents to the claim, a claimholder acquires no right to have escrow funds applied to his claim until the principal contractor has the opportunity to assert any defense he may have against the claimholder, except as to the correctness of the amount and value of the claim.

*Turzillo,* a 1967 decision, involved the language contained in both R.C. 1311.28 and 1311.31 prior to amendments effective in 1963 (130 Ohio Laws 349, 350-351).

The prior language of R.C. 1311.31 (97 Ohio Laws 502) did contain the basic provision that when a principal contractor assented to the correctness of a claim, the owner was required to pay it, when due, on a pro-rata basis. The prior language of R.C. 1311.28 (97 Ohio Laws 501) required the owner to detain subsequent payments "in his hands" to secure the claims of subcontractors. There was no provision for placing funds in escrow or receiving any orders from any court.

The *Turzillo* court held that merely filing a statement, the correctness of which the principal contractor assented to, did not automatically entitle a subcontractor to receive the funds claimed on a pro-rata basis. The court held that a claim could not be paid until due. The language "when due" was deleted in the 1963 amendment. The *Turzillo* court further held that it had to be shown that the work was actually and satisfactorily performed.

In 1963, the General Assembly amended R.C. 1311.32 (formerly G.C. 8331) (130 Ohio Laws 352) to provide that the duty to pay lien claimants the amounts and in order of preference as provided "may be enforced by action of mandamus." However, in the alternative, a subcontractor could recover against the owner the whole or prorata share of his claim when due. Accordingly, R.C. 1311.32 provides a remedy by way of either a mandamus action or a legal action.

In 1975, the General Assembly amended R.C. 1311.28 (136 Ohio Laws, Part I, 641) and provided that an owner *shall* place in escrow those funds detained pursuant to R.C. 1311.26 "to be released at such times, in such amounts, and to such persons as may be ordered by a court of competent jurisdiction or by agreement of the principal contractor and the subcontractor * * * who filed the notice * * *." (Emphasis added.) Reading R.C. 1311.28 *in pari materia* with R.C. 1311.31, it is not difficult to resolve the conflict. If the principal contractor has "assented" to the correctness of the claim (R.C. 1311.31), the principal contractor and his subcontractor have reached "agreement"

(R.C. 1311.28) and the funds can be released from escrow. Equating "assent" of the correctness of the claim with "agreement" on the amounts to be paid to a subcontractor at particular times does not conflict with R.C. 1.42, which provides that words and phrases shall be read in context and construed according to common usage.

Clearly, amendments to the same statute are to be harmonized if possible to give effect to each. R.C. 1.52. If amendments are substantively irreconcilable, the latest in date of enactment prevails. *Id.* Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation. *Id.* By analogy to this provision it is possible to harmonize R.C. 1311.28 and 1311.31.

In these cases, the General Assembly has provided a means of payment of escrow funds. If the principal contractor assents to the subcontractor's claim, then the owner pays the subcontractor a pro-rata share of the escrow funds. If, however, the principal contractor disputes the amount owed, then the parties may ask a court of competent jurisdiction to resolve the dispute.

*Turzillo* does not require a different result. That case merely stands for the proposition that even where the principal contractor assents to the correctness of the claimed amount, certain contractual obligations must still be satisfied. *Turzillo* did not hold that escrow funds can never be released by the owner without court approval.

Therefore, we hold that, when funds due subcontractors have been placed in escrow pursuant to R.C. 1311.28, a court of competent jurisdiction must order the release of the escrow funds to specific parties, in specific pro-rata amounts, and at specific times, as properly determined by that court unless the parties agree to the amount owed. Where the parties agree to the amount owed, the owner must distribute the funds on a pro-rata basis according to R.C. 1311.31.

Here, the principal contractor assented only to the correctness of some of the claims and the owner requested that the court of appeals determine which parties were owed the detained funds.[3] Unless the owner disputes the correctness of the amounts, he must distribute such funds to the subcontractors. The court of appeals did not err by ordering appellant to release the funds to those subcontractors whose claims it did not dispute.

Accordingly, the decision of the court of appeals is affirmed. The owner must disburse the funds on a pro-rata basis to claimants whose claims are not disputed. Thereafter, the disbursement of the remaining funds should be determined by a court of competent jurisdiction in accordance with this decision.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

[3] There is disagreement as to how many claimholders filed a statement and a notice pursuant to statute. Appellant states that sixteen claimholders should receive payments of the escrow funds; appellee Price Brothers. Co. identifies eleven claimholders; and the referee for the court of appeals identifies fifteen claimholders. Appellee Gemma, Inc. states that it is owed $116,169.30 and that this is undisputed; however, Price Brothers. Co. states that Gemma's claim is for $118,451.80.