THE STATE, EX REL. GENERAL ELECTRIC SUPPLY COMPANY, APPELLANT, *v.*
JORDANO ELECTRIC COMPANY, INC. ET AL., APPELLEES;
W. G. FAIRFIELD COMPANY ET AL., APPELLANTS.

[Cite as State, ex rel. General Elec. Supply Co., *v.* Jordano Elec. Co. (1990), 53 Ohio St. 3d 66.]

(No. 89-1053—Submitted May 30, 1990—Decided August 8, 1990.)

*John F. Berry,* for appellant General Electric Supply Company.

*Emens, Hurd, Kegler & Ritter, Thomas W. Hill* and *David A. Kulwicki,* for appellee.

*Lesh, Casner & Miller Co., L.P.A.,* and *Rex W. Miller,* for appellant W. G. Fairfield Company.

*Elleman & Newcome* and *Ron E. Newcome,* for appellant Central Ohio Depository.

WRIGHT, J. The issue before us is whether CMHA is entitled to a setoff against the funds in escrow to remedy Jordano's failure to perform its contract with CMHA. For the reasons that follow, we hold that CMHA is entitled to the setoff and the court of appeals correctly affirmed the trial court's grant of partial summary judgment to CMHA.

To determine the rights of the parties we must examine the statutory scheme set out in R.C. Chapter 1311 concerning mechanics' liens filed by subcontractors, materialmen, laborers, and mechanics on escrow payments to contractors on public projects. The pertinent statutes are R.C. 1311.26, 1311.28, 1311.29, 1311.31, and 1311.32. R.C. 1311.26 provides that a subcontractor, materialman, laborer, or mechanic who has provided labor or material for a project, pursuant to a contract between the principal contractor or subcontractor and the owner, may, within four months of completing the work, file "* * * a sworn and itemized statement of the amount and value of such labor performed, and material, fuel, or

machinery furnished, * * * containing a description of any promissory notes that have been given by the principal contractor or subcontractor to the lien claimant on account of the labor, machinery, or material, or any part thereof, with all credits and setoffs thereon * * *.''

R.C. 1311.28 requires that when the lien claimants have filed their statements, an owner which is a governmental entity ''* * * shall detain from the principal contractor all subsequent payments as do not in the aggregate exceed such claim or claims.'' The funds are to be placed ''* * * in an escrow account as provided for under section 153.63 of the Revised Code, to be released at such times, in such amounts, and to such persons as may be ordered by a court of competent jurisdiction or by agreement of the principal contractor and the subcontractor, materialman, laborer, or mechanic who filed the notice provided for in section 1311.26 of the Revised Code.''

Once the principal contractor receives notification from the owner or lien claimant that a statement has been filed, R.C. 1311.31 gives the principal contractor ten days in which to ''* * * give notice of his intention to dispute such claim * * *.'' Otherwise, ''* * * he has assented to its correctness, * * *'' and the lien claimant may be paid by the method set out in R.C. 1311.29.

Finally, R.C. 1311.32 allows lien claimants to bring an action in mandamus to enforce the duty to pay them. Or, the lien claimant may bring an action against the owner to recover ''* * * the whole or a pro rata amount of his claim or estimate, not exceeding in any case the balance due to the principal contractor. * * *''

The parties followed the above described procedure in this case: GESCO, COD, and Fairfield filed their statements, the amount due Jordano was placed in escrow, Jordano failed to dispute the claims, and GESCO resorted to mandamus to recover its past due payments. The plan proceeded smoothly, and even though Jordano and Merchants were unable to pay the lien claimants, the escrow funds provided an alternate source of funds for at least partial payment. The difficulty arose only when CMHA claimed a setoff.

The purpose of this statutory scheme is to protect subcontractors, materialmen, and the like from defaulting principal contractors: "Section 1311.26 *et seq.,* Revised Code (in effect prior to September 30, 1963), afford a species of garnishment to protect a subcontractor, laborer or materialman against the risk of loss of payments due him should such payments reach his principal contractor in whose hands they may be subject to the creditors or caprice of the latter." *Lee Turzillo Contracting Co.* v. *Cincinnati Metro. Hous. Auth.* (1967), 10 Ohio St. 2d 5, 39 O.O. 2d 3, 225 N.E. 2d 255, paragraph one of the syllabus. Moreover, the '' 'principal object [of the statutes] * * * is to provide security for a class of persons whose claims gradually accumulate from day to day, and who can not protect themselves in any other way' (*Clark & Co.* v. *Parker,* 58 Iowa 509, 12 N.W. 553) * * *.'' *Id.* at 11-12, 39 O.O. 2d at 7, 225 N.E. 2d at 260.

What is also clear from the case law is that the rights of GESCO, COD, and Fairfield as lien claimants are subordinate to those of the principal contractor, Jordano. In *Bullock* v. *Horn* (1886), 44 Ohio St. 420, 7 N.E. 737, decided on the basis of the predecessor statutes to R.C. 1311.26 to 1311.32, this court stated that ''* * * the rights of the workman and material-man, as against the owner,

are based upon the latter's contract with the contractor, and * * * are subordinate to the contract * * *." *Id.* at 424, 7 N.E. at 739. We reiterated this principle in *Turzillo, supra,* at 12, 39 O.O. 2d at 7-8, 225 N.E. 2d at 260-261: "The subcontractor, to 'the extent of his demand, takes the place of the contractor, so that, *if the owner, as against the latter, can withhold the payment of the moneys earned, he can do so, in like manner against the demands of the former.* The test is, whether a suit for the money in question will lie by the [general] contractor against the owner.' *Reeve* v. *Elmendorf,* 38 N. J. L. 125, 130; *Stone Post Co.* v. *Corcoran,* 80 N. J. L. 549, 77 A. 1031, 1032." (Emphasis added.) See, also, *In re Schilling* (N.D. Ohio 1918), 251 F. 966, 971.

The lien claimants do not dispute the fact that Jordano did not earn the final payment that CMHA paid into escrow. Jordano has no claim to that payment since the bankruptcy court provided in lifting the automatic stay that Jordano's estate abandoned its interest in the subject matter of this action. Standing in the shoes of Jordano, then, the lien claimants have no right to the escrow funds in the face of CMHA's claim to a setoff.

The lien claimants assert, however, that the 1963 and 1975 amendments to R.C. 1311.28 evince the legislature's intent to fix the rights of a lien claimant to the detained money at the moment the funds are put in escrow, giving the lien claimant priority over the owner's claimed setoff. Because *Horn* and *Turzillo, supra,* were decided under the pre-1963 version of R.C. 1311.28, the lien claimants assert that the principle expounded in those cases, that lien claimants' rights can rise no higher than those of the principal contractor, has been statutorily modified.

Before it was amended in 1963,

R.C. 1311.28 provided that upon receiving notice of the filing of a lien pursuant to R.C. 1311.26, the owner was to stop payments to the contractor and detain the money in its own hands. When, on completion of the principal contractor's work, the sum due to the contractor was ultimately determined, that sum became due to the lien claimants. Thus, GESCO and the other lien claimants assert, before the 1963 amendment of R.C. 1311.28 the lien claimants were limited to what was due to the contractor.

The 1963 amendment provided for sums to be detained from interim payments to the principal contractor to satisfy the mechanics' liens. According to GESCO, COD, and Fairfield this amendment represents a recognition by the legislature that interim payments become due to the principal contractor before a project is completed and that when they become due the lien claimants become entitled to the aggregate sum of their claims. GESCO, COD, and Fairfield argue, then, that the 1963 amendment accelerated the time for fixing the lien claimants' rights to the detained portion of interim payments. It is argued that at the time the owner determines to disburse a subsequent (interim) payment to the principal contractor, the owner has determined that the entire payment, including that portion detained for lien claimants, is earned by the contractor, and the lien claimants' rights in the detained portion are fixed. From that moment, according to appellants, the owner may not claim a setoff against the detained funds.

GESCO and the other appellants further maintain that by the 1975 amendment creating the escrow scheme, the legislature intended that the public owner lose its interest in the funds as soon as the payment is placed in escrow and it becomes available for distribution. Appellants argue that this

court tacitly approved this interpretation of amended R.C. 1311.28 in *State, ex rel. Dinneen Excavating Co.,* v. *Sykes* (1988), 40 Ohio St. 3d 84, 531 N.E. 2d 1309. We held in *Dinneen* that "* * * [w]here the parties [principal contractor and subcontractors] agree to the amounts owed [to the subcontractors], the owner must distribute the funds on a pro-rata basis according to R.C. 1311.31." *Id.* at syllabus. *Dinneen* took into account the post-*Turzillo* 1963 and 1975 amendments, concluding that there was no conflict between R.C. 1311.28 and 1311.31. The appellant Director of Administrative Services in *Dinneen* had contended that pursuant to R.C. 1311.28, he was under no obligation to pay the lien claimants escrow funds absent a court order. We explained that so long as the principal contractor had assented to the correctness of the claim, under R.C. 1311.31, the principal contractor and lien claimants had reached the agreement required by R.C. 1311.28 and the funds could be released from escrow. *Id.* at 87-88, 531 N.E. 2d at 1313.

*Dinneen* simply does not address the issue raised in this case because the owner in *Dinneen* did not claim a setoff. The owner in *Dinneen* had merely contended that mandamus did not lie until a court had issued an order directing whom the owner should pay and what portion of the escrow funds each lien claimant should receive. *Id.* at 84, 531 N.E. 2d at 1310. *Dinneen* does not constitute agreement, tacit or otherwise, to the lien claimants' proposition that amended R.C. 1311.28 cuts off the public owner's interest in the funds as soon as they are put in escrow, with the result that the owner may not later assert a right to a setoff.

As for appellants' argument that the 1963 and 1975 amendments to R.C. 1311.28 accelerated the time at which the lien claimants' rights become fixed,

we find this interpretation strained and unconvincing. We decline to read into the statute an intent that the General Assembly could easily have made explicit had it chosen to do so. "* * * In determining legislative intent, it is the duty of this court to give effect to the words used, not to delete words used or insert words not used." *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127, 49 O.O. 2d 445, 446, 254 N.E. 2d 8, 9. See, also, *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus. R.C. 1311.28 is silent on the issue of whether a public owner's setoff claims take precedence over mechanics' liens.

The statute that does apply here is R.C. 1311.32: "The duty to pay to lien claimants the amounts and in the order of preference, as provided in sections 1311.29 and 1311.31 of the Revised Code, may be enforced by action in mandamus or the subcontractor, materialman, laborer, or mechanic may, when such amounts are due, recover against the owner the whole or a pro rata amount of his claim or estimate, *not exceeding in any case the balance due to the principal contractor.* * * *"* (Emphasis added.) Thus, R.C. 1311.32 endorses the principle articulated in *Horn* and *Turzillo,* that the claims of subcontractors, materialmen, and the like are limited to, and rise no higher than, those of the principal contractor.

The parties do not dispute CMHA's assertion that Jordano failed to rewire Sullivant Gardens according to the terms of its contract with CMHA, nor do they deny that it was necessary for CMHA to compensate another contractor for substitute performance. The escrow payment to Jordano constituted consideration for Jordano's performance of the bargained-for electrical work. Provision 37b of

the contract between CMHA and Jordano states that neither final payment nor use or occupancy of the premises constituted acceptance of defective work. Since the lien claimants stand in Jordano's shoes with regard to their claims to the escrow funds, CMHA may assert against them the same defense it could assert against Jordano, *i.e.*, Jordano's defective work. By not performing according to the terms of the contract, Jordano, and through it the lien claimants, forfeited "the balance due to the principal contractor" to the extent of the amount necessary to pay for substitute performance. CMHA is therefore entitled to a setoff from the escrow funds.

There is no question that GESCO, COD, and Fairfield lived up to the terms of their agreements with Jordano. The lien claimants faithfully followed the statutory scheme intended to protect them from Jordano's breach of its contracts with them. Unfortunately, because the funds in escrow are insufficient to compensate all the innocent parties to this action, the claims of GESCO, COD, and Fairfield must yield to CMHA's right to a setoff, in keeping with the provisions of R.C. 1311.32. Therefore, we affirm the judgment of the court of appeals in granting partial summary judgment and awarding CMHA the setoff it claimed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.