[Cite as *Avaya Inc. v. Ohio Dept. of Commerce, Div. of Unclaimed Funds*, 2021-Ohio-4626.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Avaya Inc.,                                      :

      Appellant,                         :

v.                                               :

Ohio Department of Commerce,                     :
Division of Unclaimed Funds,

      Appellee.                          :

                              :

No. 21AP-194
(C.P.C No. 20CV-7859)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on December 30, 2021

**On brief:** *Thompson Hine LLP*, and *Thomas Wyatt Palmer* for appellant. **Argued:** *Thomas W. Palmer.*

**On brief:** *Dave Yost,* Attorney General*, Hilary R. Damaser,* and *Eythan J. Gregory*, for appellee. **Argued:** *Hilary R. Damaser.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Appellant, Avaya Inc. ("Avaya"), appeals from a judgment of the Franklin County Court of Common Pleas affirming the December 1, 2020 final order of appellee, Ohio Department of Commerce, Division of Unclaimed Funds ("Division"). We reverse.

## I. Facts and Procedural History

{¶ 2} Appellant is a leading technology company providing services to banks and the financial industry, and asserts it is the owner of unclaimed funds. Appellee is the state entity tasked with the responsibility of holding lost, forgotten, or unclaimed funds and returning these unclaimed funds to their rightful owners. National City Corporation Bank ("National City"), is the holder of the funds and is required by law to report to appellee

once funds become dormant and to deposit unclaimed funds into a Division account. R.C. 169.05. Owners can search for funds and file a claim to establish the rights to payment. R.C. 169.08. In addition, there are professional finders who will locate funds on behalf of an owner for a fee.

{¶ 3} National City reported the unclaimed funds to Division in 2006 with minimal information. The report indicated the owner was Avaya, in the amount of $18,100, with a transaction date of December 17, 2002 and a code indicating the check was for an account payable to Avaya. The holder did not supply an address, an account number, an employer's identification number, or a social security number associated with the account. The original check or a copy was not provided, and its whereabouts are unknown.

{¶ 4} In 2019, United Asset Recovery, a professional finder retained by appellant, located the unclaimed funds in Ohio and submitted a claim. Appellee requested additional information but ultimately denied the claim. Appellant requested a formal hearing and provided additional information to support its claim to the funds. Appellee found that appellant's identity was clearly established but again denied the claim.

{¶ 5} Appellant requested a hearing pursuant to R.C. 169.08, and a hearing was held on June 18, 2020 where the claim was denied. Appellant then requested a hearing pursuant to R.C. 119.07 and a hearing was conducted before a hearing examiner on October 6, 2020. The hearing examiner recommended that appellant's claim be denied. The parties submitted objections to the Hearing Examiner's Report and appellee issued a final order on December 1, 2020 denying appellant's claim. Appellant timely commenced an administrative appeal to the Franklin County Court of Common Pleas and the trial court affirmed the appellee's final order.

{¶ 6} Appellant timely appealed to this court.

## II. Assignments of Error

{¶ 7} Appellant assigns the following errors for our review:

FIRST ASSIGNMENT OF ERROR
The Trial Court abused its discretion by ruling that the December 1, 2020 Final Order is supported by reliable, probative, and substantial evidence.

SECOND ASSIGNMENT OF ERROR
The Trial Court applied the wrong standard of review, erred as a matter of law, and abused its discretion by failing to consider all evidence.

THIRD ASSIGNMENT OF ERROR
The Trial Court erred as a matter of law and abused its discretion by ruling that the Final Order is in accordance with law, when the Division applied a non-existent "rule" and misapplied the law to deny Avaya's claim.

## III. Standard of Review

{¶ 8} A common pleas court has the authority to review an order of an administrative agency. R.C. 119.12(B). A common pleas court must review the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with the law. *Univ. of Cincinnati v. Conrad,* 63 Ohio St.2d 108, 110 (1980). The terms reliable, probative, and substantial evidence have been defined by the Ohio Supreme Court as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.,* 63 Ohio St.3d 570 (1992).

{¶ 9} The common pleas court is required to give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at ¶ 111. The trial court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review where the court 'must appraise all the evidence as to the credibility of the witness, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.,* 2 Ohio App.3d 204, 207 (1st Dist.1981). A common pleas court conducts a de novo review of questions of law and exercises independent judgment in determining whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.,* 66 Ohio St.3d 466 (1993).

{¶ 10} An appellate court reviews a decision of an administrative agency in a more limited fashion than the trial court except for issues of law. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. A court of appeals is not permitted to substitute its judgment for that of an administrative agency or the common pleas court unless there has been an abuse of discretion below. Absent an abuse of discretion on the part of the trial court, the court of appeals must affirm. *Bartchy v. State Bd. of Edn.,* 120 Ohio St.3d 205, 2008-Ohio-4826. However, an appellate court has "plenary review of purely legal questions." *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418. ¶ 15 (10th Dist.). While the common pleas court must defer to an agency's factual findings, "it must construe the law on its own." *Clovernook Health Care Pavilion v. Ohio Dept. of Medicaid,* 10th Dist. No. 20AP-87, 2021-Ohio-337, ¶ 9. "[W]hether a trial court correctly interpreted and applied a statute is a question of law" that is reviewed on appeal de novo. *Id.,* quoting, *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 8.

## IV. Legal Analysis

{¶ 11} Appellant asserts in his first assignment of error that the trial court erred in finding that appellee's final order was supported by credible evidence. The burden is on the claimant to prove ownership of the unclaimed funds, and appellant argues that it has met that burden and established entitlement to the funds. R.C. 169.08. A claimant must prove its right to payment by a preponderance of the evidence, which means that it is more likely than not that the claimant is the owner of the unclaimed funds. *Hal v. State Dept. of Edn.,* 10th Dist. No. 18AP-301, 2019-Ohio-5081, ¶ 35.

{¶ 12} I begin with a review of appellee's process for lost and forgotten funds, which starts when a holder, defined as "any person that has possession, custody, or control of moneys," classifies those moneys as unclaimed funds. R.C. 169.01(D)(1). Property is characterized as unclaimed funds when there has been no activity by the owner for a prescribed period of time. *Sogg v. Zurz*, 121 Ohio St.3d 449, 2009-Ohio-1526, ¶ 2. The holder is required by statute to provide appellee a verified report that includes accurate and relevant information:

> (A)(1) Every holder of unclaimed funds and, when requested, every person that could be the holder of unclaimed funds,

under this chapter shall report to the director of commerce with respect to the unclaimed funds as provided in this section. The report shall be verified.

(2) With respect to items of unclaimed funds each having a value of fifty dollars or more, the report required under Division (A)(1) of this section shall include the following:

(a) The full name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of unclaimed funds under this chapter;

* * *

(c) The nature and identifying number, if any, or description of the funds and the amount appearing from the records to be due;

(d) The date when the funds became payable, demandable, or returnable and the date of the last transaction with the owner with respect to the funds;

(e) Subject to division (J) of this section, the social security number of the owner of the unclaimed funds, if it is available;

* * *

(g) Other information that the director prescribes as necessary for the administration of this chapter.

R.C. 169.03.

Any unclaimed property reported to the Division is held in perpetuity and remains the property of the original owner. *Sogg* at ¶ 10.

{¶ 13} Appellee receives the report of unclaimed funds from holders and is required to ensure that the information is accurate. R.C. 169.03. Appellee provides public notice to owners and has a website that provides guidance to file a claim. The statutory process for claiming funds states:

(A) The director shall pay to the owner or other person who has established the right to payment under this section, funds from the unclaimed funds trust fund in an amount equal to the amount of property delivered or reported to the director * * *. Any person claiming a property interest in unclaimed funds delivered or reported to the state under Chapter 169. of the Revised Code * * * may file a claim thereto on the form prescribed by the director of commerce.

R.C. 169.08.

Appellee is afforded sufficient latitude to reunite owners with lost and forgotten funds, and the evidence required to support a claim is not limited to a specific list of items. Upon its initial review of the claim, appellee sent an "evidence letter" to appellant that outlined additional information to process the claim. (Claim Evidence Form at 1.) Appellee required documentation establishing that appellant had a business relationship with National City, and offered examples such as uncashed checks, original cashier's checks, money orders, and statements. National City's retention policy had expired, and the bank no longer had any information regarding the check. Appellee received information about the funds from National City, but that information has also been discarded. An owner trying to claim lost and forgotten property should not be penalized if unable to meet rigid and unreasonable demands. Appellee must demonstrate flexibility in reviewing evidence of a transaction that occurred 18 years ago, and not frustrate the goal of returning unclaimed funds to their owner.

{¶ 14} Appellant has presented substantial evidence to establish that it is the only entity doing business in the United States as Avaya Inc., no comma. Appellant submitted records that show that Avaya was first registered and authorized to conduct business in Ohio in 2000, and is the only Avaya ever recognized in Ohio. In addition, appellant has shown that it is the only Avaya registered to conduct business in all fifty states and the District of Columbia, and that there has been no other Avaya registered with any state since 2000. Appellant submitted United States Patent and Trademark Office records that show it is the only registrant of the trademark Avaya in United States, and that no other company is authorized to use the name Avaya in the United States. Appellant also submitted documents from the Securities and Exchange Commission recognizing Avaya. Mindful that appellee does not pay claims on name alone, the data presented by appellant is not limited solely to identity but established the uniqueness of the name to the exclusion of any other Avaya. Appellee asks us to speculate that a rogue Avaya gets National City to issue a check that is never cashed or that the owner may really be an entity other than Avaya. Pure speculation should not be the basis to deny a claim.

{¶ 15} Appellant produced evidence of a relationship with National City by providing proof of a 2006 credit card transaction where a National City employee paid appellant for training via credit card. This is a business transaction, not a retail purchase.

There is no distinction between a business transaction evidenced by a check or credit card, and there is no requirement to produce another check transaction to demonstrate a relationship. Appellant also was able to locate 13 undated records of accounts it had with National City. It is undisputed that Avaya was created in 2000. National City was acquired by PNC Bank in 2008 and changed its name, so any transactions between appellant and National City had to occur within this 8-year period. While I recognize that the 13 records show no identifiable relation to the unclaimed funds, they clearly show a relationship between appellant and National City. There must be some weight afforded to the records for the purpose of establishing a relationship that existed 18 years ago.

{¶ 16} Appellee rejected the initial claim and emphasized that appellant must prove a timely business relationship with National City inextricably linked to the unclaimed fund in question. Appellee clearly recognizes and states that there is no legal requirement to substantiate the exact transaction reported by a holder, and likewise there is no requirement to prove a temporal relationship. The Ohio Administrative Code provides that "Ownership may be established by supplying the director with the claimant's name, address and taxpayer identification number (social security number) * * * [t]he claimant may also submit documentation substantiating a relationship with the reporting holder." Ohio Adm.Code 1301:10-4-02(A)(1). It does not require any link or connection to the specific unclaimed fund or that the relationship had to exist at or around the time of the reported transaction. Ohio Adm.Code 1301:10-4.

{¶ 17} The statute is not ambiguous. The language is clear, and had the legislature demanded a direct or temporal connection, it could have easily stated so. *Brooks Capital Servs., LLC v. 5151 Trabue Ltd.,* 10th Dist. No. 12AP-30, 2012 Ohio App. LEXIS 3901. In analyzing R.C. 3923.23 which requires reimbursement to medical providers but is silent regarding rates of payment, this court refused to add language to the statute stating it has "no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve" a statute. *Ohio Podiatric Med. Assn. v. Taylor,* 10th Dist. No. 11AP-916, 2012-Ohio-2732, ¶ 22. Since the legislature could have included a statement in R.C. 3923.23 requiring parity of the payment, but did not, I must assume the omission was intentional. *Id.,* quoting, *State ex rel Gen. Elec. Supply Co. v. Jordano Elec. Co., Inc.,* 53 Ohio St.3d 66, 71 (1990). Yet, appellee wants to impermissibly add language to the statute

by stating "[i]t would be absurd to interpret Ohio Administrative Code Section 1301:10-4-02 to require proof of a relationship with the holder that did not necessarily connect the claimant with the unclaimed fund in question."  (Appellee's Brief at 28.)  But that is an exaggeration of the rule.  There is absolutely no case law and not a single Division document, directive or instruction that requires such a connection.

{¶ 18} Appellee requires appellant to establish ownership by corroborating information on the holder's report, but that the report itself cannot serve as evidence of ownership.  While not serving as absolute proof of ownership, the report reflects a relationship between appellant and National City, and therefore requires consideration in the claim process.  "[T]he Division understood that the fund originally was a payment made by National City to Avaya that was never negotiated."  (Appellee's Brief at 17-18.)

{¶ 19} Appellee has admitted that the limited information it accepted from National City makes it extremely difficult for a claimant to prove ownership.  While perhaps an understatement, appellee played a significant role in creating this dilemma when it acquiesced and accepted the incomplete report.  It is patently unfair to apply no scrutiny to a holder but require unreasonable verification from an owner.

{¶ 20} In *Fugo v. Ohio DOC*, Franklin C.P. No. 13 CVF 4520 (Dec. 19, 2013), the court established the doctrine of impossible proof regarding UFA claims.  The operative facts are Mr. Fugo received a cashier's check from a bank and placed it in a drawer, found it 18 years later, and the bank denied the check.  The bank as holder reported a lump sum in the amount of $99,159.66 to the Division as unclaimed funds for the relevant period, but provided no names or any other identifying information, and the Division accepted the report.  Mr. Fugo filed a claim for unclaimed funds and attached the original check, but the Division steadfastly relied upon the bank's and Division's non-compliance to deny the claim, finding there was no evidence that Mr. Fugo's funds were part of the $99,159.66 lump sum deposit or were ever received or reported.  The trial court reproached the bank and the Division for the lack of information, reversed the decision, and awarded Mr. Fugo the unclaimed fund.  The case applies because it correctly places culpability on Division for accepting incomplete information.

{¶ 21} I believe appellee has an obligation, under the circumstances present here, to apply latitude and draw reasonable inferences from the available information.  A review

establishes that it is more probable than not appellant is the owner of the unclaimed funds, and it is an abuse of discretion for the trial court to find that the final order is supported by reliable, probative, and substantial evidence.

{¶ 22} We sustain appellant's first assignment of error. Having sustained appellant's first assignment of error, the remaining assignments of error are moot. We need not address appellant's second assignment of error claiming the trial court applied the wrong standard of review and appellant's third assignment of error claiming the trial court erred by ruling the final order was in accordance with the law when appellee applied a non-existent rule and misapplied the law to deny appellant's claim. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this case to that court to determine statutory fees and costs, including appellate fees, due Avaya pursuant to R.C. 169.08(G).

*Judgment reversed.*

SADLER, J. concurs in judgment only.
NELSON, J. concurs in judgment with separate opinion.

NELSON, J., concurring in judgment.

{¶ 23} The law is not always as divorced from common sense as the Division's position here might suggest.

{¶ 24} The Division holds funds related to a check written by National City to vendor Avaya Inc. That money is not the government's: The Division's job is to hold it in trust only until it can be turned over to its rightful owner.

{¶ 25} Avaya Inc. readily established that it is Avaya Inc., and the Division does not question that fact. When the Division pushed for more information, Avaya further established that it is the *only* entity that can or could operate under that name, and that it has had that exclusive status since at least two years before the check in question was written. What's more (not that more is needed under such circumstances), Avaya adduced documentation of another business dealing with National City within four years after the check was written, and pointed to another 13 (undated) transactions with the bank as well.

{¶ 26} But the Division argues that proof of (even exclusive) identity and a past business relationship with the check writer is not enough. In its briefing (although not so much at argument), and consistent with its Final Order adopting the recommendations of its hearing examiner, the Division attempts to construct at least three additional hurdles to Avaya's ability to recoup the money. None of these barriers is justified by statute or by duly promulgated regulation: they appear to have been fabricated on the fly outside the text of the law.

{¶ 27} *First*, the Division claims in its briefing that: "The documentation used to prove [a claimant's link to funds at issue] must not be public records, but, rather, records in the owner's possession or available to the owner and a few others." Appellee's Brief at 1-2 (attempting to nullify effect of Avaya's proof that it, alone, has the right to use its name in commerce). The Division provides no citation to this apparently newly crafted and unpromulgated prohibition, and it does not hint much at how many cognoscenti would disqualify such proof. There would seem to be little reason to rule out, say, sworn contemporaneous public testimony about a debt or transaction in trying to get to the bottom of a later claim on funds. I do not understand the Division to have maintained this stance at argument. This attempt to erect a barrier to Avaya's claim fails, even as it betrays a potentially cavalier approach to decision-making based on published and approved rules.

{¶ 28} *Second*, the Division posits that, beyond the record evidence that the check at issue was for an "account payable," Avaya needed in these circumstances to "prove a business relationship between [it] and National City at or around the time of the unclaimed fund's transaction date of December 12, 2002." *See* Appellee's Brief at 9; *see also id.* at 8, 11, 18, 23. Again, the Division does not quote from any law or promulgated rule containing the "at or around the time of the * * * transaction date" language, nor does it spell out what this uncodified time limitation means (apart from saying, by implication, that the 2006 transaction and the 13 undated transactions from 2000 to 2008 were insufficient to satisfy this test with regard to the 2002 check). Ohio Administrative Code 1301:10-4-02(A)(1) does *permit* a claimant attempting to prove ownership to provide a (matching) name, address, and taxpayer identification number, or documents "substantiating a relationship with the reporting holder." But the Division offers no reason to discount, say, a record reflecting regular payments once every five years from a payor to a payee, even though that

five-year increment would mean the previous transaction was not "at or around the time" of the transaction in question.

{¶ 29} Again, I did not understand counsel for the Division to stick to that "at or around" language at argument. And again, too, the Division's statutory charge is to determine nothing more or less than whether a claimant is the "owner" of the funds in question, R.C. 169.08(A), *see also* Ohio Adm.Code 1301:10-4-02 ("individual submitting a claim for funds must establish ownership"). With Avaya having established that it is the *only* entity of that name (with its unique, exclusive identifier), its *license* to submit documentation of its relationship with the payor/reporting holder is not transformed into the preclusive "*requirement*" that the Division suggests here. *Compare* Appellee's Brief at 16 (1301:10-4-02 "rule sets forth the *requirements* for establishing ownership") (emphasis added).

{¶ 30} *Third*, the Division then goes even further in suggesting that Avaya needed to document not only a relationship with National City, but a relationship "related to the *particular* unclaimed fund at issue here." Appellee's Brief at 24; *see also id.* at 23 (complaining that Avaya failed to prove "a relationship with the holder that would have generated the reported transaction or a timely debtor-creditor relationship with the holder"). The Division goes further still to any extent it suggests that the rule requires proof of a relationship that "necessarily" connects the claimant with the unclaimed fund. *Id.* at 28. Yet again, the Division cannot point to anything in statute or written and promulgated rule substantiating this purported requirement. Again, the Administrative Code section to which the Division adverts permits a claimant (think "John Smith") to point to "a relationship with the reporting holder," 1301:10-4-02(A)(1), but does not "necessarily" require further substantiation of a transaction regarding the *particular* funds (at least not here, where there can be but one "Avaya" and where Avaya showed an ongoing relationship with the payor/holder who had written the check on an account payable). I am perplexed, too, by any suggestion that the Division ought not consider National City's contemporaneous notation that the check was for an "account payable" to (vendor) Avaya as part of the context surrounding the payment. *Compare* Appellee's Brief at 20-21.

{¶ 31} The Division is correct that it is "required by law to match unclaimed funds to their rightful owners." Appellee's Brief at 30. Once the Division Superintendent

determined that Avaya's documentation "fairly establishe[d] that the claimant is the reported owner" of the funds, its inquiry should have been near an end. *See* C.R. at 329 (Akil Hardy e-mail). Instead, the Division sought to press on with investigation into the particular transaction that gave rise to National City's check to Avaya. But in this context, lack of further information about the circumstances of that particular transaction does not permit the Division to avoid its responsibility to return the funds to their rightful owner. In its approach to this matter, the Division seems to me to have hewed a bit too closely to the ad hoc questioning methodology of the bridge keeper guarding the Bridge of Death in *Monty Python and the Holy Grail.* It may have been fun to ask King Arthur (and, significantly, not others), "[w]hat is the airspeed velocity of an unladen sparrow?", but that bureaucratic exercise in arcana turned out not to serve the bridge keeper or his task very well. *Compare* Appellee's Brief at 35 ("The requirements [sic] may be impossible for Avaya to meet, and admittedly, that is unfortunate * * * *") (emphasis deleted).

{¶ 32} The Division accepted National City's good faith report of unclaimed funds (even though business-to-business checks fall outside the statutory definition of unclaimed property, *see* R.C. 169.01(B)(2)(b)). Having done so, the Division should have proceeded according to the text of the law and of the administrative code. I do not view the problem here as arising from the Division's acceptance of a report that contained only limited information. The problem, rather, lies in the Division's refusal to pay out the funds after Avaya established beyond peradventure its unique identity as payee.

{¶ 33} The trial court was required to "defer to the agency's factual findings" here only to the extent that such findings were supported by reliable, probative, and substantial evidence, and the trial court also was required to evaluate whether the Division's order was in accordance with law. *Compare* Decision and Entry at 4. They weren't, and it wasn't. The record reflects that Avaya established that at the relevant time, Avaya held the unique, exclusive right to use of that name in the business context in which National City paid it on an account payable. The record also reflects other dealings between the two entities. And the record reflects no evidence whatsoever tending to show that another Avaya Inc. could have been the intended recipient of the check. *Compare* Decision and Entry at 6-7 (recognizing that Avaya "produced a great deal of data showing that it was the only lawful user of Avaya and/or Avaya Inc.," but then following Division's pursuit of a red herring by

observing that the 2006 National City payment to Avaya "was clearly not evidence of a similar transaction" in 2002). The trial court provided no citation to statute, regulation, or case law in asserting that "[e]stablishing that you have the same name as the name attributed to the funds will never be enough"—even, apparently, in the additional context here where Avaya showed that no other commercial entity could have the same name and that it had done other business with payor/holder National City within four years of the check having been written on the account payable. I concur that the trial court abused its discretion.

{¶ 34} I therefore concur in the judgment of the court reversing the decision of the common pleas court that would have allowed the Division's unwarranted determination to stand. I also agree that on remand, the trial court should determine statutory fees and costs, including appellate fees, due Avaya pursuant to R.C. 169.08(G).

_____