**COVENANT MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**ABLE CONCRETE PUMP, et al., Defendants.**

**No. C–83–0986 WHO.**

United States District Court, N.D. California.

July 25, 1984.

Mark O. Rorem, E.S. Wilson, Maloney, Chase, Fisher & Hurst, San Francisco, Cal., for plaintiff.

Maurice Trad, San Francisco, Cal., for John A. Ferrera, dba John Ferrera Painting Co.

Aaronson, Dickerson & Lanzone, P.C., San Carlos, Cal., for Pacific Ready-Mix Inc.

Foley & Foley, San Jose, Cal., for Nestor Insulation, Inc.

Hugh P. Gallagher, Berkeley, Cal., for Pacific Tel. & Tel. Co.

George E. Couper, Inc., A Law Corp., Sacramento, Cal., for L.E. Boyd Roof Structures.

Joseph H. Inglese, P.C., San Francisco, Cal., for Wesco.

John K. Van de Kemp, Atty. Gen., of Cal., Randall P. Borcherding, Deputy Atty. Gen., San Francisco, Cal., for Franchise Tax Bd. of the State of Cal.

Raymond J. Davilla, Jr., Kelly, Leal & Olimpia, P.C., Sunnyvale, Cal., for Gerry Wilkinson Corp.

Stimmel & Stimmel, P.C., Lee D. Stimmel, Patricia Nichols, San Francisco, Cal., for Alameda Elec. Distributors, Inc.

Robert L. Randall, San Jose, Cal., for Independent Scissors Lifts, Inc.

Law Offices of Edward D. Schwartz, David L. Samuelson, San Jose, Cal., for Space Designs, Inc.

Burriss, Lowman & Rice, P.C., Mountain View, Cal., for Neu Bros. Grading & Paving, Inc.

Auerbach & Dauphin, Inc., Harold B. Auerbach, San Francisco, Cal., for Creditors American Steel & Gulf Western Mfg. Co., Bohn Heat Transfer Div.

Stimmel & Stimmel, Patricia Nichols, Stephen V. O'Neal, Claude M. Stern, Horwich & Warner, Michael Kissinger, San Francisco, Cal., for The Creditors Committee.

Gregory D. Walker, Oakland, Cal., for Frank A. Diamantine dba Jackson Street Lumber Sales.

## OPINION AND ORDER

ORRICK, District Judge.

The sole issue left to be decided in this action is whether a surety for both payment and performance bonds on a government contract who completes performance for the defaulting contractor and also deposits the full amount of the payment bond with the court is entitled to sums retained by the government from the original contractor's progress payments even though the payment bond does not fully compensate that contractor's subcontractors. For the reasons set forth herein, plaintiff surety in this case is a subrogee of the government and has an equitable right to the retainages.

I

On November 16, 1981, Joel-Li Construction Company ("Joel-Li") entered into a contract with the United States government to construct a research facility for

NASA at the Ames Research Center in Mountain View, California. The total contract price of $1,312,000 was amended by change orders to $1,334,285. Payment and performance bonds, as required by the Miller Act, 40 U.S.C. § 270a [1], were executed by Joel-Li as principal and plaintiff, Covenant Mutual Insurance Company ("Covenant"), as surety. The liability limit on the payment bond was $524,800.[2] The liability limit on the performance bond was $1,180,000. The contract between the government and Joel-Li provided that 10 percent of each progress payment be retained by the government. This is a standard provision in government contracts. The sums retained are commonly referred to as "contract retainages".

Joel-Li defaulted on January 19, 1983, having completed work with a value of $1,246,165. To that date, the government had paid $1,180,565 to Joel-Li and had retained the balance of $65,600. Pursuant to a Takeover Agreement, dated February 2, 1983, Covenant completed the contract, which it had the option to do under its performance bond. After Covenant took over, additional change items were issued totalling $45,374.99, increasing the total contract price to $1,379,659.99. Subtracting the amount previously paid to Joel-Li, this left $199,094.99 to cover the cost of the work: $133,494.99 as the balance of the contract and $65,600 in prior retainages. Covenant spent $238,548.03 to complete the project. Thus, Covenant suffered financial losses, even if it is entitled to the retainages.

On March 2, 1983, Covenant filed an interpleader action and paid $524,800, the full sum of its obligations under the payment bond, into the Court. The defendants are creditors of the contractor, Joel-Li, i.e., subcontractors who have not been paid. The payment bond is designed to pay them. During the first hearing the creditors organized themselves. A Creditors' Committee was formed to oversee their interests and to accept and review claims on the payment bond. On April 20, 1983, an Order re Interpleader submitted by the Creditors' Committee was filed.

Paragraph 8 of that Order provided that the preliminary report of the Committee would contain a recommendation as to whether plaintiff should be discharged from further liability. The Court approved the preliminary report of the Committee at a December 2, 1983, hearing. At that time, the parties suggested that the Court postpone ruling on the issue of who is entitled to retainages until it could be determined whether the interpleaded payment bond fund would be sufficient to satisfy all bona fide claims. Unfortunately, it was not sufficient to cover all claims approved for disbursement by the Committee. After a pro rata distribution among approved claims,

1. The relevant part of the Miller Act, 40 U.S.C. § 270a provides:

(a) Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":

(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person.

2. 40 U.S.C. § 270a(a)(2) provides a specific formula for determining the penal amount of a Miller Act payment bond:

Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

each claimant will recover approximately 67 percent of its claim.

## II

Contracts for construction of a government building are subject to the provisions of the Miller Act, 40 U.S.C. §§ 270a–270d. This Act requires parties contracting with the government to secure two bonds: a performance bond and a payment bond. If the original bonded contractor fails to complete performance, the performance bond surety must either complete performance or reimburse the government for its completion costs, minus retainages. A payment bond surety must pay laborers and materialmen whom the bonded contractor failed to pay.[3] The issue in this case is whether a surety for both performance and payment, who has completed performance at a cost greater than the balance owing on the contract and who has deposited the full amount of the payment bond with the court, is entitled to retainages even though the laborers and materialmen will not be fully reimbursed by the amount of the payment bond.

The defendant subcontractors attempt to characterize the bonds in this case as one bond. But the Miller Act was enacted to provide a separate bond for laborers and materialmen.[4] *United States v. Munsey Trust Co.*, 332 U.S. 234, 243, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947). *See also United States ex rel. James E. Simon Co. v. Ardelt-Horn Construction Co.*, 446 F.2d 820, 821 (8th Cir.1971) ("[T]he Miller Act by its clear language, which is fully supported by the legislative history, provides for a payment bond for protection of those providing labor and material on government projects and a performance bond for the protection of the United States"). Furthermore, the defendants agreed to discharge plaintiff from its obligations under the *payment* bond, implicitly recognizing that the two are separate.

Several parties may be entitled to assert equitable liens against sums retained by the government during the course of performance. The priority of rights to such retainages has been adjudicated in a variety of contexts, but the Court is aware of no authority that squarely addresses the issue presented by this case. In all the reported cases, a surety has performed on one bond or the other; in this case the plaintiff has performed on both.

■ Covenant claims entitlement to the retainages because it completed the contract under its performance bond. Under the theory of equitable subrogation, one who pays the debts or fulfills the duties of another steps into the shoes of that party and is entitled to the securities and remedies of that party. Defendants contend that unpaid laborers and materialmen have a prior equitable claim, and argue that a surety is not entitled to equitable subrogation unless and until the laborers and materialmen are paid in full.

■ A surety who completes performance has an "equitable right" to indemnification out of a retained fund superior to the right of a bank that loaned the defaulting contractor money. *Prairie State Bank v. United States*, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed.2d 412 (1896). A surety is also entitled to retainages when it pays laborers and materialmen although the contractor has completed the contract. *Hen-*

---

**3.** The Act defines the rights of persons furnishing labor or material:

Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor ... shall have the right to sue *on such payment bond* ...

40 U.S.C. § 270b(a) (emphasis added). In this case, the surety recognized the rights of unpaid laborers and materialmen to sue on the payment bond and brought an interpleader action.

**4.** The Heard Act, which governed government contracts prior to 1935, required only one bond but it covered both performance and payment. 28 Stat. 278 (1894), amended 33 Stat. 811 (1905). The slight change created by the Miller Act did not affect the equitable principles announced in earlier cases. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 140, 83 S.Ct. 232, 236, 9 L.Ed.2d 190 (1962).

ningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908). However, a surety who does not complete the contract but who pays the full amount of the payment bond is not entitled to retainages ahead of the laborers and materialmen when the payment bond does not fully compensate them. *American Surety Co. v. Westinghouse Electric Manufacturing Co.*, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935). But the government would be entitled to payment ahead of the laborers and materialmen if it had unpaid claims against the contractor. *Id.* The government is also entitled to set off claims it has against the original contractor before the surety who has fully paid laborers and materialmen may recover retainages. *Munsey, supra,* 332 U.S. at 234, 67 S.Ct. at 1599.

The reported opinions reflect some confusion about the purpose of retainages. The *Munsey* court noted that "[i]f the money is retained only to assure performance of the work, then the contractor might compel payment when the work is accepted. In that case, the surety's argument falls, since obviously, before paying, the government might set off claims against the contractor." *Id.* at 241, n. 4, 67 S.Ct. at 1603, n. 4. Later in the same opinion, the court states: "But although we have assumed, for the purposes of another argument, that assurances that laborers and materialmen will be paid is one of the reasons for retaining the money, it seems more likely that completion of the work on time is the only motive." *Id.* at 243, 67 S.Ct. at 1603.

■ The government clearly can use retained funds to complete the contract itself. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 141, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962). It is equally clear that the laborers and materialmen have no rights against the government. *Munsey, supra,* 332 U.S. at 241, 67 S.Ct. at 1602. The question in this case then becomes whether the surety is a subrogee of the government and therefore entitled to the retainages (which were insufficient to cover the cost of completing the contract), or

is a subrogee of the contractor and therefore obligated to pay the claims of the defendant laborers and materialmen.

■ Although the question is close, this Court holds that under the circumstances of this case, the surety is entitled to the retainages as the subrogee of the government. By full satisfaction of its payment bond, the surety plaintiff has fulfilled its obligation to pay the laborers and materialmen.

> The obligation of the surety, however, unlike that of the contractor was created solely by the bond and is limited thereby and by the equities growing out of the suretyship relation. In any suit upon the bond, at least against the surety the nominated penalty was to be the limit of recovery.

*American Surety, supra,* 296 U.S. at 136–137, 56 S.Ct. at 10–11. *Accord Pennsylvania Fire Insurance Co. v. American Airlines, Inc.*, 180 F.Supp. 239, 241 (E.D.N.Y. 1960).

Paragraph 3 of the Takeover Agreement executed by Covenant and the government provides:

> Any unpaid earnings of the defaulting contractor, including retained percentages and progress estimates for work accomplished prior to termination, shall be subject to claims by the Government against the contractor, except to the extent that such unpaid earnings may be required to permit payment to the completing surety of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the contract.

This language is identical to the wording in 41 C.F.R. § 1–18.803–6, "Dealings with surety-takeover agreements." The government had the right to use the retained earnings to complete the contract and it specifically delegated this right to plaintiff, in it's role of completing the contract under the performance bond. *Aetna Casualty & Surety·Co. v. United States*, 435 F.2d 1082 (5th Cir.1970); *Trinity Universal Insurance Co. v. United States*, 382 F.2d 317,

320 (5th Cir.1967) ("The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to set-off, but as a subrogee having the same rights to the funds as the government."); *Royal Indemnity Co. v. United States,* 93 F.Supp. 891, 896 (Ct.Cl.1950) ("[S]hould a surety step in and complete its performance bond, it becomes subrogated to the Government's claim against the retained percentages."). *But cf. Munsey, supra,* 332 U.S. at 234, 67 S.Ct. at 1599 (government is entitled to set off claims it has against the original contractor before a surety who has fully paid laborers and materialmen on a *payment* bond may recover retainages).

The defendants rely principally on *American Surety, supra,* 296 U.S. at 133, 56 S.Ct. at 9. *American Surety* does hold that a surety may not recover retainages until laborers and materialmen have been paid in full but in that case the surety did not complete performance of the contract. Furthermore, the court noted that the government has priority for payment over the laborers and materialmen. Thus, as a subrogee of the government, the plaintiff is entitled to payment ahead of the defendants. As noted above, the *American Surety* court also stated that the obligation of the surety on the *payment* bond was limited to the amount of the bond. Finally, that case explicitly limited its holding to a surety whose equitable rights are derived from paying laborers and materialmen.

> A surety who has undertaken to pay creditors of the principal, though not beyond a stated limit, may not share in the assets of the principal *by reason of such payment* until the debts thus partially protected have been satisfied in full.

*Id.* at 137, 56 S.Ct. at 11 (emphasis added). The plaintiff in the instant case claims equitable subrogation by virtue of its completing *performance,* not by virtue of paying the defendants.

Covenant argues that a surety would never complete a contract but would always leave performance to the government if it is not entitled to retainages when it performs but is entitled to deduct the retained amount from the cost of completion if the government performs. *See Security Insurance Co. of Hartford v. United States,* 428 F.2d 838, 842–843 (Ct.Cl.1970) ("[I]t would defeat the purpose of the retainages—to assure completion of the contract—to permit setoff against the claims of the completing performance bond surety"). This compelling policy argument is further highlighted by the observation in *Munsey*: "[T]he statutory provisions requiring a separate bond for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government." 332 U.S. at 243–244, 67 S.Ct. at 1603–1604.[5]

The defendant laborers and materialmen have been paid a pro rata share of the payment bond required by the Miller Act. They agree that plaintiff should be released from its obligations under that bond. Although some of the disputed retainages were accumulated when defendants were performing on the contract and plaintiff was not, the government would be entitled to all retained sums if the plaintiff had elected to pay on its performance bond rather than to perform. In the instant situation, where the cost of completion exceeded the contract price, including retainages, the surety is entitled to the entire retained sums.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff is hereby discharged from liability under the payment bond.

2. In light of the competing equities and the fact that the bond is insufficient to fully compensate defendants, plaintiff's request for attorney's fees is denied.

---

**5.** Joel-Li defaulted on January 19, 1983. The first manned flight simulator was scheduled for delivery to the job site in early February 1983; twenty NASA personnel and their families were due to accompany it. Covenant exercised its option to undertake completion under the performance bond, in part, because of the critical time element and the inconvenience to NASA if the work was not completed prior to installation of the simulator.