The STATE OF OHIO ex rel. GRAY ROAD FILL, INC., Appellee,

v.

WRAY, Director, et al., Appellees;

United States Department of Labor, Appellant.

[Cite as *State ex rel. Gray Road Fill, Inc. v. Wray* (1996), 109 Ohio App.3d 812.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE09–1122.

Decided March 14, 1996.

*Martin, Bailey & MacDonald* and *J. Stephen Cox,* for appellee Gray Road Fill, Inc.

*Betty D. Montgomery,* Attorney General, and *Frederick C. Schoch,* Assistant Attorney General, for appellee Jerry Wray, Director, Ohio Department of Transportation.

*McNamara & McNamara* and *Dennis D. Liston,* for appellee National American Insurance Company.

*Edmund A. Sargus, Jr.,* United States Attorney, and *Deborah F. Sanders,* Assistant United States Attorney, for appellant.

---

TYACK, Judge.

■ On July 12, 1994, Gray Road Fill, Inc. ("Gray") filed a complaint in mandamus against Jerry Wray, Director of the Ohio Department of Transportation, S.O.S. Construction Industries ("S.O.S.") and National American Insurance Company ("National"). Gray requested a declaration that it had a valid lien on funds held by the Ohio Department of Transportation ("ODOT") and an order compelling ODOT to release those funds to Gray. In the alternative, Gray requested judgment against S.O.S. and S.O.S.'s surety, National, for $4,971, the amount of the lien, plus interest.

By way of background, S.O.S. contracted with ODOT to demolish homes in the Cincinnati area in preparation for construction of the Ronald Reagan Cross County Highway extension. The contract was funded by the Federal Highway Act of 1921. Gray subcontracted with S.O.S. and provided labor and material for the extension. Gray sent invoices for its services to S.O.S.; however, S.O.S. did not remit any payment.

Pursuant to R.C. 1311.26, Gray filed an affidavit with ODOT stating Gray was owed money from S.O.S. Pursuant to R.C. 1311.28, ODOT detained $6,320 from S.O.S. for Gray's lien. Soon thereafter, the United States Department of Labor ("USDL") contacted ODOT and requested ODOT to withhold approximately $31,000 from S.O.S. for back wages allegedly due under the Davis–Bacon Act and the Contract Work Hours and Safety Standards Act. On July 12, 1994, Gray instituted this suit. On September 29, 1994, ODOT informed the USDL that ODOT was withholding funds from S.O.S.

On September 30, 1994, Gray filed a motion for default judgment against S.O.S., which had failed to plead or otherwise appear in the action. On October 11, 1994, the trial court filed an entry granting judgment to Gray and ordering ODOT to release the funds requested by Gray. On March 2, 1995, the USDL filed a motion to intervene, claiming it had an interest in the funds that ODOT had been ordered to release to Gray. The USDL also moved to vacate or modify or to stay the October 11 entry. On July 12, 1995, the trial court overruled the USDL's motion to intervene. A judgment entry was journalized on August 3, 1995. On August 30, 1995, the USDL filed a motion for relief from judgment, which is currently pending in the trial court. The USDL has timely appealed the overruling of its motion to intervene, assigning three errors for our consideration:

"First Assignment of Error

"The trial court erred in holding that appellant failed to demonstrate an interest in the funds which ODOT detained pursuant to relator-appellee's lien.

"Second Assignment of Error

"The trial court erred in ruling that the funds withheld in accordance with appellant's request are not the subject of this case and are capable of being adjudicated at the administrative level.

"Third Assignment of Error

"The trial court erred in denying appellant's motion to vacate or modify or alternatively to stay the proceeding."

The USDL's assignments of error are interrelated and will, therefore, be addressed together. The USDL argues that the trial court should have allowed it to intervene because appellant showed, pursuant to Civ.R. 24(A), that it had an interest in the funds requested by Gray, and the existing parties did not adequately protect that interest. The trial court held that while the USDL had shown an interest in the money held by ODOT pursuant to the USDL's request, the USDL did not have an interest in the money held by ODOT pursuant to Gray's lien.

■ In *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d 350, 352, 29 OBR 479, 480–481, 505 N.E.2d 1010, 1012–1013, this court held that in order to prevail on an application to intervene under Civ.R. 24(A), the application must be timely, and the applicant must show that it has an interest relating to the property that is the subject of the action, that the applicant is so situated that disposition of the action may as a practical matter impair or impede its ability to protect that interest, and that the existing parties do not adequately represent its interest. *Id.*, quoting McCormac, Ohio Civil Rules Practice (1970), 80–81, Section 4.36. Thus, all of the above requirements must be met, or the application fails.

■ The first requirement under Civ.R. 24(A) is that the application be timely. Gray contends that the USDL's application was not timely. Civ.R. 24(A) does not define timely; however, ample case law exists on the issue of timeliness. Whether an application to intervene is timely is determined from the facts and circumstances of a particular case. *Kourounis v. Raleigh* (1993), 89 Ohio App.3d 315, 318, 624 N.E.2d 276, 277–278, citing *NAACP v. New York* (1973), 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 662–663; *Norton v. Sanders* (1989), 62 Ohio App.3d 39, 42, 574 N.E.2d 552, 554–555. Here, the USDL did not apply to intervene until after the trial court's final judgment. Intervention after final judgment has been entered is unusual and ordinarily will not be granted. *Kourounis* at 318, 624 N.E.2d at 277–278; *Norton* at 42, 574 N.E.2d at 554–555.

■ In this context, courts in Ohio have noted that a mere lapse in time does not make an application to intervene untimely. See *S. Ohio Coal Co. v. Kidney* (1995), 100 Ohio App.3d 661, 672, 654 N.E.2d 1017, 1024. Factors to consider include the point to which the suit has progressed, the length of time the applicant knew or should have known of the pending suit, and the reason for the delay in attempting to intervene. *Id.* at 672–673, 654 N.E.2d at 1024–1025.

Here, the USDL did not apply to intervene until almost five months after the final judgment entry. According to the record, the USDL was informed twice of the trial court's judgment. On October 20, 1994, the Ohio Attorney General's Office notified the USDL of the trial court's judgment, stating that ODOT would release the money to Gray unless the USDL contacted ODOT. On October 28, 1994, the USDL wrote ODOT, objecting to the release of the money and asserting priority over Gray's lien. On November 2, 1994, the Attorney General's Office again wrote to the USDL, stating that USDL would have to intervene if it wanted to pursue the funds. On March 2, 1995, USDL submitted its application to intervene—almost five months after the final judgment entry and over four months after it was aware of the trial court's decision.

Hence, at the time of the USDL's application to intervene, the suit had progressed to well after its final judgment entry, and the USDL had been aware of this judgment for over four months. Neither the record nor the USDL sets forth any explanation for the delay. In its reply to Gray's memorandum opposing USDL's application to intervene, the USDL did state that it had established a sufficient interest in the funds that were the subject matter of the case and timely filed its application "considering all the circumstances." The USDL did not explain what these circumstances were and, therefore, failed to show that its application was timely, regardless of its arguments concerning its interest in the funds.

This case is unlike other cases in which courts have permitted intervention after final judgment. USDL does not seek to protect its right to appeal, although even this would be troublesome since the time to appeal has long since past. See *Norton,* 62 Ohio App.3d at 42, 574 N.E.2d at 554–555. Rather, the USDL sought intervention so that it could attempt to get Civ.R. 60(B) relief as a party. In addition, the USDL does not claim that it was simply waiting to see if another party, perhaps ODOT, would protect its interests. See *S. Ohio Coal Co.,* 100 Ohio App.3d at 665, 654 N.E.2d at 1019–1020. Indeed, the USDL did not know of the suit until after final judgment, and even when ODOT informed it that it would release the funds if it did not act, it still waited over four months to apply.

In *Norton,* the court of appeals quoted the United States Supreme Court in regard to cases such as the one at bar:

" 'The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.' " *Norton,* 62 Ohio App.3d at 42, 574 N.E.2d at 554–555, quoting *United Airlines, Inc. v. McDonald* (1977), 432 U.S. 385, 395–396, 97 S.Ct. 2464, 2470–2471, 53 L.Ed.2d 423, 432–434.

As discussed above, the USDL failed to show that it had acted promptly after the final judgment entry. This, in and of itself, would be sufficient reason to affirm the trial court's ruling. However, the record before us reveals other reasons that are more consistent with the reasoning used by the trial court.

As noted above, for the USDL to have the ability to intervene as of right, the USDL must also show that it has an interest relating to the property that is the subject of the action and that the USDL is so situated that disposition of the action may, as a practical matter, impair or impede its ability to protect that interest. We do not believe that the USDL has established either of these conditions based upon the record before us.

We are aware of certain cases in which the federal courts have held that it is proper for the government to withhold funds from contractors for suspected violations of the Davis–Bacon and related Acts. See, for instance, *Ames Constr. Co. v. Dole* (D.Minn.1989), 727 F.Supp. 502; *Fry Bros. Corp. v. HUD* (C.A.10, 1980), 614 F.2d 732; and *Winzeler Excavating Co. v. Brock* (N.D.Ohio 1988), 694 F.Supp. 362. However, in none of these cases was the USDL's interest being weighed against the adjudicated interest of a lienholder. Further, in none of these cases did the USDL fail to avail itself of its right to assert its own right to acquire a lien on behalf of the wage earners as allowed by Ohio law. In essence, the USDL is saying that it does not need to follow Ohio law as structured to protect lienholders, but can merely assert that it suspects a violation of federal law and use that assertion to deprive innocent parties of the funds to which they are entitled under Ohio law. We are not persuaded that the USDL has such an entitlement, especially when it failed to timely assert its own claims for lienholder's status. Therefore, we do not believe that the USDL has demonstrated sufficient interest in the funds to which Gray is entitled to require intervention after judgment.

Finally, the USDL has not shown impairment of it ability to collect elsewhere the funds that it claims for an alleged violation of the Davis–Bacon and related Acts. The record does not show an inability to collect from the bond with National American Insurance Company or even an inability to collect from S.O.S. Construction Industries directly. The record is devoid of any proof that the only way USDL can collect is through taking the funds to which Gray has demonstrated its entitlement.

The trial court, therefore, did not err in denying appellant's application to intervene. In addition, the trial court did not err in overruling appellant's motions to vacate or modify the October 11, 1994 judgment entry or to stay the proceedings. One must be a party in order to use Civ.R. 60 for relief from judgment.

Accordingly, appellant's first, second and third assignments of error are overruled.

Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JOHN C. YOUNG, J., concurs.

BRYANT, J., dissents.

PEGGY BRYANT, Judge, dissenting.

Being unable to agree with the majority opinion, I respectfully dissent.

Civ.R. 24(A)(2), pertaining to intervention of right, provides:

"Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Although the majority opinion first concludes that motion of the United States Department of Labor ("department") to intervene was not timely, the trial court's opinion did not discuss the timeliness issue, instead focusing on the department's interest in the property. Even though the department submitted the application after judgment, postjudgment intervention nonetheless may be permitted. Because in the exercise of its discretion the trial court could have found the department's motion timely, I cannot affirm the trial court's decision based on an assumption that the motion was untimely. See *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d 350, 352, 29 OBR 479, 480–481, 505 N.E.2d 1010, 1012–1013; *Sharp v. Kuhn* (Oct. 4, 1978), Fayette App. No. 78–CA–10, unreported.

Concerning the department's interest relating to the property of this action, the trial court concluded that the department had no interest because "the property that is the subject of this case is the money that ODOT detained pursuant to Plaintiff's lien." I disagree, as the department has an interest in ensuring that the funds ODOT withheld for Davis–Bacon violations and for the lien of Gray Road Fill, Inc. ("Gray Road"), although not segregated and not

sufficient to meet both obligations, are first disbursed toward federal labor law violations. See *Jamestown Village Condo. Owners Assn. v. Market Media Research, Inc.* (1994), 96 Ohio App.3d 678, 694, 645 N.E.2d 1265, 1276 (sufficient interest in property to intervene because promissory note held by intervenor was secured by mortgage on the subject property).

The Davis–Bacon Act, Sections 276a to 276a–5, Title 40, U.S.Code, provides that every contract for construction, alteration, and/or repair of public buildings or public works of the United States shall contain stipulations of the minimum wages that "the contractor * * * shall pay all mechanics and laborers employed directly upon the site of the work." Section 276a(a), Title 40, U.S.Code. The Administrator of the Wage and Hour Division, Employment Standards Administration, United States Department of Labor determines the required minimum wages. Section 1.2, Title 29, C.F.R.; *Universities Research Assn. v. Coutu* (1981), 450 U.S. 754, 757, 101 S.Ct. 1451, 1454–1455, 67 L.Ed.2d 662, 667.

The Act also requires that public works contracts stipulate that "there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the contractor, subcontractors, or their agents." Section 276a(a), Title 40, U.S.Code. These public contracts also contain a provision authorizing contracting agencies, like ODOT, to withhold funds:

"(2) *Withholding.* [ODOT] shall * * * upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the contractor under this contract * * * so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics * * * employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic * * * all or part of the wages required by the contract, [ODOT] may, after written notice to the contractor * * *, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased." Section 5.5(a)(2), Title 29, C.F.R.

The regulations implementing the Act further mandate that a federal agency providing assistance through loans, grant, loan guarantees, or insurance take such action as may be necessary to suspend payments to the general contractor. Section 5.9, Title 29, C.F.R.; *Universities Research, supra,* 450 U.S. at 757–758, 101 S.Ct. at 1454–1455, 67 L.Ed.2d at 667–668. Here, upon notice by the department of suspected violations, ODOT withheld money due S.O.S. as general contractor. See, also, *Winzeler Excavating Co. v. Brock* (N.D.Ohio 1988), 694

F.Supp. 362, 363 (Ohio EPA withheld payments to general contractor for Davis–Bacon violations).

Once the contractor's payments are withheld and accompanying administrative proceedings determine that the general contractor did not pay its employees the contractual minimum wage, the Comptroller General of the United States pays the general contractor's undercompensated laborers and mechanics from the withheld funds. Section 276a–2(a), Title 40, U.S.Code. If the funds withheld from the general contractor are insufficient to reimburse all the laborers and mechanics, they possess a private right of action against the general contractor's surety. Section 276a–2(b), Title 40, U.S.Code; *Universities Research, supra,* 450 U.S. at 754–759, 101 S.Ct. at 1451–1456, 67 L.Ed.2d at 662–668.[1]

Because the department in enforcing the Act has an interest in a portion of the funds ODOT withheld from S.O.S. as potential compensation for laborers and material suppliers, for purposes of Civ.R. 24(A), the department demonstrates a sufficient interest relating to the funds withheld from S.O.S.

The majority opinion, however, concludes the department cannot have any protected interest in the withheld funds because it did not file an Ohio mechanic's lien. Without determining whether the department properly could file R.C. 1311.26 and 1311.28 liens, the availability of a state remedy does not require the department to abandon the remedy provided by the Act and the S.O.S./ODOT contract entered into pursuant to that Act; the Act and contract specifically state that funds may be withheld for potential distribution to undercompensated laborers and material suppliers. See, also, *Sears, Roebuck & Co. v. J–Z Realty Co.* (Dec. 18, 1975), Franklin App. No. 75AP–358, unreported (subcontractor still could claim an interest in property for Civ.R. 24 intervention even though he did not perfect a lien).

Indeed, the department arguably has a priority in the withheld funds, despite the mechanics' lien Gray Road filed. Because mechanic's liens cannot encumber public property, R.C. 1311.28 liens attach to a public fund set aside for the payment of subcontracts. A subcontractor with an R.C. 1311.28 lien may be paid from the fund only "to the extent the owner still owes the prime contractor on the project." *In re William Cargile Contr., Inc.* (Bankr.S.D.Ohio 1993), 151 B.R. 854,

---

**1.** Although the Act mentions laborers' and mechanics' private right of action against the general contractor and its surety, that action exists under the Miller Act, Section 270(a), Title 40, U.S.Code. See, also, *Universities Research, supra,* 450 U.S. at 783–784, 101 S.Ct. at 1467–1468, 67 L.Ed.2d at 682–684 (no private right of action under the Davis–Bacon Act for employees denied back wages when administrative proceedings concluded that the contract did not require the prevailing wage contract stipulations). The Miller Act provides these laborers a private right of action against the general contractor's payment bond. Suits on the general contractor's payment bond generally may be brought by any person who has furnished labor or material in the performance of the contract and has not been paid in full within ninety days.

857. Thus, a mechanic's lien does not attach to public funds until those funds become due and payable to the general contractor. *Poenisch v. Kingsley–Dunbar, Inc.* (1990), 64 Ohio App.3d 699, 582 N.E.2d 1071, paragraph two of the syllabus; *Lee Turzillo Contracting Co. v. Cincinnati Metro. Hous. Auth.* (1967), 10 Ohio St.2d 5, 39 O.O.2d 3, 225 N.E.2d 255 (a subcontractor's R.C. 1311.28 lien secures an "assignment pro tanto of the moneys remaining due from the owner to the principal contractor").

When the department orders that funds be withheld for violations of the Act, upon an administrative determination that the general contractor was not paying the prevailing wage, those funds never become due and payable to the general contractor; thus a subcontractor's lien cannot attach to them. See *State ex rel. Gen. Elec. Supply Co. v. Jordano Elec. Co.* (1990), 53 Ohio St.3d 66, 71, 558 N.E.2d 1173, 1177–1178 (subcontractors claims can rise no higher than those of the principal contractor); Todd R. Marti & Amy R. Goldstein, Ohio Mechanics' and Materialmen's Liens (2 Ed.1992), Section 10–12 (any public authority setoff rights are superior to the rights of lien claimants); see, also, *W.R. Cooper Gen. Contr., Inc. v. United States* (1987), 12 Cl.Ct. 406, 409 (money withheld by Department of Labor for alleged Davis–Bacon violations was not retention of unpaid subcontractor's money), vacated on other grounds (1988), 843 F.2d 1362, 1364; *In re Quinta Contractors, Inc.* (Bankr.M.D.Pa.1983), 34 B.R. 129 (payments withheld under Davis–Bacon Act are not property of general contractor's bankruptcy estate).

Notwithstanding the preference provisions of R.C. 1311.29, public authorities generally have first claim to funds otherwise due the principal contractor. Marti & Goldstein, Section 10–12. Before the laborers and material supplier may receive payment, the government often may set off or recoup payment for claims against the general contractor. *Covenant Mut. Ins. Co. v. Able Concrete Pump* (D.C.Cal.1984), 609 F.Supp. 27, 30 (United States government gets to set off claims against the original contractor before payment of laborers' and material suppliers' claims against the general contractor); *Amoco Oil Co. v. Southeastern Mail Transport* (Fla.1985), 628 F.Supp. 37 (where funds withheld for general contractor's violation of Service Contract Act, judgment creditor not entitled to funds until administrative proceedings concluded and employees compensated in accordance with that Act).

The majority opinion also suggests that the department cannot allege an interest in the funds because it did not proceed against S.O.S.'s payment bond. While the laborers, material suppliers, and subcontractors may sue S.O.S. on its payment bond, see *Universities Research, supra*, the Davis–Bacon Act provides that the department and contracting authority, ODOT, may withhold funds from payment to the general contractor. The Act does not provide a specific remedy through which the department or ODOT may proceed against S.O.S's payment

bond for violations of the Act. See *Covenant Mut. Ins., supra,* 609 F.Supp. at 32 (distinguishing between payment bonds, for payment of laborers and material supplier, and performance bonds, for completion of the construction).

Moreover, as necessary to a Civ.R. 24(A) intervention, the department's interest in the retained funds may, as a practical matter, be impaired if it is not allowed to intervene. Within its application to intervene, the department need not assert that its interests assuredly will be impaired; it need only assert that its interests may be practically or legally impaired. *Blackburn, supra,* 29 Ohio App.3d at 354, 29 OBR at 482–483, 505 N.E.2d at 1014; *Sears, supra.* Because the funds ODOT withheld were never segregated between the competing claims here and further are insufficient to satisfy both, the department's interest may be impaired if the Act's reimbursements do not receive priority.

Finally, the department is not adequately represented by the parties to this action because Gray Road is interested in the priority and protection of its own claims, not those of the department. *Jamestown Village Condo., supra,* 96 Ohio App.3d at 694, 645 N.E.2d at 1276; *Sears, supra.*

Because the subject matter of this action includes funds retained by ODOT that may be applied to violations of the Act or to Gray Road's mechanic's lien, the department's application sets forth a proper cause for intervention. The department claims an interest in the withheld funds, the interest may as a practical matter be impaired by assigning priority to the funds, and the interest is not adequately represented by Gray Road. Accordingly, the trial court erred in finding that the department lacks sufficient interest in the property. I would remand the matter to the trial court to consider the timeliness issue under Civ.R. 24(A)(2).