**CITY OF CONNEAUT; John Fithian Contracting Company et al.; United States Department of Labor, Wage and Hour Division, Appellant,**

v.

**ALLEGHENY SURETY COMPANY, Appellee.**

[Cite as *Conneaut v. Allegheny Sur. Co.* (1998), 128 Ohio App.3d 724.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 97–A–0012.

Decided June 29, 1998.

*Emily M. Sweeney,* United States Attorney, and *Michael Anne Johnson,* Assistant United States Attorney, for appellant.

*Charles M. Diamond Co., L.P.A.,* and *Peter S. Liviola,* for appellee.

FORD, Presiding Judge.

This is an appeal from the Ashtabula County Court of Common Pleas. Appellant, the United States Department of Labor, Wage and Hour Division ("USDL"), appeals from a judgment entry overruling its motion for summary judgment and granting the motion for summary judgment of appellee, Allegheny Surety Company.

The following facts are not generally in dispute and are taken largely from the trial court's judgment entry and the parties' stipulations. On July 27, 1993, the city of Conneaut contracted with Parmenter Excavating, Inc. ("Parmenter") to be the general contractor for the Gateway Sewer Project. The contract price was $152,106, and the project was to be funded by the United States Department of Housing and Urban Development. The agreement between Conneaut and Parmenter was subject to the labor standards of Sections 1440(g) and 5310, Title 42, U.S.Code, and Sections 327 through 332, Title 40, U.S.Code.

Parmenter breached the contract by failing to complete the project. Accordingly, numerous parties asserted claims against Parmenter. First, Conneaut claimed breach of contract. Second, appellant asserted that Parmenter had failed to pay some of its employees appropriate wages. Third, John Fithian Contract-

ing Company ("Fithian") and Knickerbocker Equipment Company ("Knicker-bocker"), subcontractors on the project, alleged that Parmenter had failed to pay for services rendered pursuant to their agreements with Parmenter. Appellee was the surety for Parmenter's performance on the agreement.

The dispute in this case arose from competing claims to $58,064.64 held by Conneaut in escrow. Pursuant to the parties' agreement, the court distributed $15,000 of that amount to Fithian and $11,785.71 to Allegheny. Therefore, $31,278.93 remains in the Conneaut escrow fund, and that amount is subject to competing claims by appellant and appellee.

Fithian filed a perfected mechanic's lien pursuant to R.C. 1311.25 *et seq.* against the sum held by Conneaut in the amount of $22,400, and assigned and transferred this mechanic's lien to Allegheny on June 14, 1996. Therefore, appellee was subrogated to Fithian's rights, if any, to the funds held by Conneaut.

Knickerbocker also perfected a mechanic's lien pursuant to R.C. 1311.25 *et seq.* against Conneaut for the sum of $24,193.13, with ten percent interest. Appellee paid Knickerbocker $18,000 on its lien. Appellee was subrogated to Knickerbock-er's rights, if any, to the remaining funds held in escrow by Conneaut. There-fore, appellee is subrogated to the rights of Parmenter, Fithian, and Knicker-bocker to the remaining $31,278.93 held in escrow by Conneaut.

Appellant conducted a labor standards investigation of Parmenter's perfor-mance with respect to the Gateway Sewer Project. On September 2, 1994, appellant notified Conneaut to withhold $31,278.93 from payments to Parmenter because appellant's investigation revealed that Parmenter failed to pay its employees $31,278.93, including $29,578.18 in prevailing wages and $2,700 in overtime wages. Appellant notified Parmenter of its investigative findings on September 9, 1994. On May 12, 1995, appellant charged Parmenter with labor violations. Parmenter failed to respond to the charges, and appellant's assess-ment of $31,278.93 in back wages became final.

Accordingly, the parties disputed whether appellant or appellee had the superior claim to the $31,278.93 remaining in the Conneaut escrow account. Both parties filed complaints seeking those funds and ultimately moved for summary judgment on the issue of priority to those funds. In a judgment entry filed on January 20, 1997, the trial court granted appellee's motion for summary judg-ment and overruled appellant's motion. Therefore, the court held that appellee had lien priority to receive the remaining $31,278.93 held in escrow by Conneaut. Appellant timely filed a notice of appeal and asserts the following assignment of error:

"The trial court erred in holding that mechanic's liens filed in accordance with Ohio law have priority over the Department of Labor's interest in contract funds to satisfy the contractor's unpaid wages under the Davis–Bacon and related Acts."

The sole issue in this case is which party has priority to the funds held in escrow by Conneaut. Appellant asserts that it has priority to the escrow account pursuant to its ability to withhold payment from the general contractor for a violation of the Davis–Bacon Act, Section 276 *et seq.*, Title 40, U.S.Code. Appellee, on the other hand, contends that since it was subrogated to the rights of parties with perfected mechanic's liens on the escrow fund, it has priority.

In the case at bar, the parties stipulated that the labor standards of Section 1440(g), Title 40, U.S.Code apply to the contract between Parmenter and Conneaut. According to that statute, the provisions of the Davis–Bacon Act, Section 276a *et seq.*, Title 42, U.S.Code apply to Parmenter's contract with Conneaut. The Davis–Bacon Act regulates the wages to be paid by a contractor to mechanics and laborers working on the construction of federally funded projects, and further provides that in federally funded projects the contract shall contain:

"[A] provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed * * *. [T]here may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and not refunded to the contractor, subcontractors, or their agents." Section 276a(a), Title 40, U.S.Code.

When the contractor or subcontractor fails to meet these requirements:

"[T]he Federal agency, upon its own action or upon written request of an authorized representative of the Department of Labor * * * shall take such action as may be necessary to cause the suspension of the payment * * * of funds until such time * * * sufficient funds are withheld to compensate employees for the wages to which they are entitled * * *." Section 5.9, Title 29, C.F.R.

■ In summary, the USDL may withhold payment from the general contractor of a federally funded construction project when the contractor fails to pay

those wages required by the Davis–Bacon Act. *Universities Research Assn. v. Coutu* (1981), 450 U.S. 754, 757, 101 S.Ct. 1451, 1454–1455, 67 L.Ed.2d 662, 667.

■ Despite these requirements under federal law, appellee contends that its interest has priority over that of appellant pursuant to its perfected liens under Ohio's mechanic's lien statutory framework, R.C. 1311.26 *et seq.*[1] For the following reasons, we conclude that appellant has priority to the funds in the escrow account for two reasons: (1) the Davis–Bacon Act preempts Ohio mechanic's lien statutory framework where the two laws directly conflict, and (2) appellee's lien never attached due to Parmenter's Davis–Bacon violations.

■ First, we will address the preemption issue. A state law is preempted by a federal statute or regulation when the state action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587. The Supreme Court of the United States has explained that "[t]he language of the [Davis–Bacon Act] and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." *United States v. Binghamton Constr. Co.* (1954), 347 U.S. 171, 176–177, 74 S.Ct. 438, 98 L.Ed. 594, 599. Thus, when a state statute places the rights of contractors over those of workers who have not been paid federally mandated wages, the state law is preempted by the federal law to enable the workers to be properly compensated before contractors.

■ In the case *sub judice,* operation of Ohio's mechanic's lien law would prevent the USDL from accomplishing its goal of preserving the rights of the workers on the Gateway Sewer Project to receive the federally mandated prevailing and overtime wages for their labor. Accordingly, to the extent that operation of R.C. 1311.26 *et seq.* would enable appellee to be paid instead of the laborers, the Davis–Bacon Act preempts state law. Accordingly, appellant's lien is superior to that of appellee.

Even if the mechanic's lien statute were not preempted by federal law, appellant would still have priority to the funds. Our research of this question reveals that this is a case of first impression in Ohio. However, the Tenth District Court of Appeals has recently indirectly addressed the issue of the competing interests of the holder of a mechanic's lien and the USDL when there

---

1. "Unlike liens upon privately owned property, the subcontractor of public works retains a lien upon a public fund rather than on the property itself." *Poenisch v. Kingsley–Dunbar, Inc.* (1990), 64 Ohio App.3d 699, 704, 582 N.E.2d 1071, 1073.

are Davis–Bacon violations. *State ex rel. Gray Road Fill, Inc. v. Wray* (1996), 109 Ohio App.3d 812, 673 N.E.2d 198.

In *Gray Road Fill,* the USDL requested the Ohio Department of Transportation ("ODOT") to withhold payment from the general contractor in a public works project. A subcontractor initiated suit in the court of common pleas, and the trial court entered default judgment against the general contractor and ordered ODOT to release the funds to the subcontractor. The USDL moved to intervene, arguing that it had an interest in the funds that the trial court had ordered to be released to the subcontractor. The trial court overruled the motion to intervene.

On appeal, the court initially held that the trial court properly overruled the USDL's motion to intervene because it was not timely, as required by Civ.R. 24(A). *Id.* at 817, 673 N.E.2d at 201–202. As an additional basis justifying its decision, the court further explained:

"[T]he USDL must * * * show that it has an interest relating to the property that is the subject of the action and that the USDL is so situated that disposition of the action may, as a practical matter, impair or impede its ability to protect that interest. We do not believe that the USDL has established either of these conditions based upon the record before us.

"We are aware of certain cases in which the federal courts have held that it is proper for the government to withhold funds from contractors for suspected violations of the Davis–Bacon and related Acts. See, for instance, *Ames Constr. Co. v. Dole* (D.Minn.1989), 727 F.Supp. 502; *Fry Bros. Corp. v. HUD* (C.A.10, 1980), 614 F.2d 732; and *Winzeler Excavating Co. v. Brock* (N.D.Ohio 1988), 694 F.Supp. 362. *However, in none of these cases was the USDL's interest being weighed against the adjudicated interest of a lienholder.* Further, in none of these cases did the USDL fail to avail itself of its right to assert its own right to acquire a lien on behalf of the wage earners as allowed by Ohio law. In essence, the USDL is saying that it does not need to follow Ohio law as structured to protect lienholders, but can merely assert that it suspects a violation of federal law and use that assertion to deprive innocent parties of the funds to which they are entitled under Ohio law. We are not persuaded that the USDL has such an entitlement, especially when it failed to timely assert its own claims for lienholder's status. Therefore, we do not believe that the USDL has demonstrated sufficient interest in the funds to which [the subcontractor] is entitled to require intervention after judgment." (Emphasis added.) *Gray Road Fill* at 817, 673 N.E.2d at 201.

The court also noted that the USDL could have obtained the funds directly from the general contractor's surety or from the general contractor. *Id.* Therefore, the court held that the trial court properly overruled the USDL's motion to intervene after judgment. *Id.* at 818, 673 N.E.2d at 202.

Significantly, since *Gray Road Fill* involved a postjudgment motion to intervene filed by the USDL, which was not timely filed, it is factually distinguishable from the case at bar. Furthermore, the priority issue in that case arose only after a lienholder's interest had been adjudicated. In contrast, the priority issue in the case at bar arose in the summary judgment context.

Furthermore, although we agree with much of the *Gray Road Fill* majority's discussion, we dispute the assertion that the USDL could have filed a mechanic's lien under Ohio law. R.C. 1311.28 authorizes only subcontractors, materialmen, or laborers to file liens pursuant to R.C. 1311.25 *et seq.* Accordingly, we do not perceive any authority in the Revised Code enabling the USDL to file a mechanic's lien.

Moreover, the *Gray Road Fill* majority's analysis did not address the assertions advanced by the dissent, which relied heavily upon that court's prior decision in *Poenisch v. Kingsley–Dunbar, Inc.* (1990), 64 Ohio App.3d 699, 582 N.E.2d 1071. In *Poenisch,* the court explained:

"Pursuant to this statutory framework [for mechanic's liens in public works projects], a materialman who is owed money by the general contractor only may retain a lien upon payments that are due the principal contractor. It follows that the lien, although properly filed, does not attach to the funds until those funds are due the principal contractor.

" * * *

"[A] valid materialman's lien * * * cannot attach until the funds are due the principal contractor." *Id.* at 704–705, 582 N.E.2d at 1074.

■ The Supreme Court of Ohio has held that under the mechanic's lien statutory framework for public projects, "the claims of subcontractors, materialmen, and the like are limited to, and rise no higher than, those of the principal contractor." *State ex rel. Gen. Elec. Supply Co. v. Jordano Elec. Co.* (1990), 53 Ohio St.3d 66, 71, 558 N.E.2d 1173, 1178.

The dissent in *Gray Road Fill* echoed this analysis and applied it to the situation in which the USDL orders payment to be withheld from the general contractor due to Davis–Bacon Act violations. Judge Bryant explained that a subcontractor with a valid lien may be paid from the public fund set aside for the payment of subcontracts "only 'to the extent the owner still owes the prime contractor on the project.' *In re William Cargile Contr., Inc.* (Bankr.S.D.Ohio 1993), 151 B.R. 854, 857. Thus, a mechanic's lien does not attach to public funds until those funds become due and payable to the general contractor." *Gray Road Fill,* 109 Ohio App.3d at 820–821, 673 N.E.2d at 204 (Peggy Bryant, J., dissenting). Accordingly, the dissent concluded:

"When the [USDL] orders that funds be withheld for violations of the [Davis–Bacon] Act, upon an administrative determination that the general contractor was not paying the prevailing wage, those funds never become due and payable to the general contractor; thus, a subcontractor's lien cannot attach to them." *Id.* at 821, 673 N.E.2d at 204.

█ We agree. In the present case, as a result of violations of the Davis–Bacon Act, Parmenter, the general contractor, was not entitled to payment of funds from Conneaut because appellant exercised its right under federal law to order the withholding of the funds. Since appellee is subrogated to the mechanic's lien rights of two subcontractors, such liens attach only when the general contractor is entitled to payment. Here, Parmenter was not entitled to the payment of the $31,278.93, due to labor violations. Therefore, appellee's claim to those funds has not attached; thus, appellant has priority to those funds held in escrow by Conneaut. This analysis also supports the legislative intent of the Davis–Bacon Act, which is to benefit laborers, not contractors.[2]

Accordingly, the trial court erred in granting appellee's motion for summary judgment and in overruling that of appellant. Appellant has priority to the $31,278.93 held in escrow by Conneaut. Appellant's assignment of error is well taken.

For the foregoing reasons, appellant's assignment of error has merit. The judgment of the Ashtabula Court of Common Pleas is reversed, and judgment is entered in favor of appellant.

*Judgment reversed.*

CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.

---

2. We note that our result may well have been different if the subcontractors' liens had attached before the USDL gave notice of the suspension of funds, as was the case in *Gray Road Fill.*