L.E. MYERS COMPANY, HIGH VOLTAGE SYSTEMS DIVISION, APPELLEE, *v.* JORDANO ELECTRIC COMPANY, APPELLEE; SMITH, DIR., APPELLANT.

(No. 87AP-949 — Decided April 19, 1988.)

*Millisor & Nobil* and *Roger L. Sabo,* for plaintiff-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Michael L. Squillace* and *Peter E. DeMarco,* for appellant.

McCORMAC, J. Defendant-appellant, Ohio Department of Transportation ("ODOT"), appeals the trial court's granting of a summary judgment to plaintiff-appellee, L.E. Myers Company ("Myers"), in a mandamus action in which ODOT was ordered to pay Myers $69,372.11. Myers, a subcontractor, first filed a statutory lien

against ODOT pursuant to R.C. 1311.26 *et seq.* because the prime contractor, Jordano Electric Company ("Jordano"), had failed to pay Myers for its work and materials used on an ODOT highway lighting project.

Then Myers filed an amended complaint against Jordano and its surety, Merchants' and Manufacturers' Insurance Company ("M & M"), which included a mandamus claim against ODOT seeking payment for materials and labor which it used on the ODOT project. ODOT cross-claimed against Jordano and its surety for $202,826.50, for failure to complete the highway lighting project. The court *sua sponte* stayed the proceedings against M & M pending the outcome of its liquidation proceedings.

The court overruled ODOT's motions for summary judgment and granted Myers' motion for summary judgment against ODOT and awarded it $69,372.11. Although the trial court did not dispose of the claims and cross-claims against Jordano's surety, it included Civ. R. 54(B) language in its order causing the summary judgment against ODOT to be a final appealable order.

Defendant-appellant appeals the summary judgment and asserts the following assignments of error:

"I. Because no subsequent payments were due from the appellant to the prime contractor it was error for the court of common pleas to allow recovery on filed liens.

"II. The common pleas court erred in failing to allow appellant to set off amounts owed to it by the prime contractor against amounts claimed by appellee pursuant to filed liens.

"III. The court of common pleas erred as a matter of law in finding that liens filed by the appellee were valid.

"IV. The court of common pleas erred by failing to find the existence of genuine issues of material facts:

"A. The court failed to find that the amount owed to the appellee by the prime contractor was a genuine issue of material fact.

"B. The court of common pleas erred in finding filed liens valid despite genuine issues of material fact.

"C. The court of common pleas erred in failing to find that genuine issues of material fact existed as to the amount of subsequent payments due from the appellant.

"V. The court of common pleas lacked subject matter jurisdiction to order an award for money damages against appellant.

"VI. It was error for the court of common pleas to grant an award of prejudgment interest from the date of the lien filing against the state of Ohio."

In 1984, Jordano, the prime contractor, signed an agreement with ODOT promising to install electrical facilities at a rest area on Interstate 71 for $207,986.65. Jordano then entered into an agreement with Myers, a subcontractor, to perform a certain portion of this work for $83,700.

Jordano and Myers began work on the project and ODOT made periodic payments to Jordano for the work completed. Jordano did not pay Myers for work it had done.

With the exception of one day in February 1986, Jordano stopped working on the project on December 20, 1985. ODOT made its last payment to Jordano on January 21, 1986.

Jordano was scheduled to return to work on April 1, 1986, but did not and, due to this failure, ODOT terminated the contract and, on April 17, 1986, requested M & M, the contractor's surety, to complete the project. Because of financial problems and an eventual liquidation order, M & M refused to perform and ODOT contracted with another firm to complete the work for a price of $229,557.

On March 6, 1986, Myers filed its first notice of lien with ODOT totalling $58,236.25 and, on May 6, 1986, filed a second notice of lien with ODOT totalling $11,135.86. Myers had previously submitted invoices to Jordano for work performed on the project totalling the total amount of the two liens.

ODOT did not owe, nor did it pay, Jordano any money after it was notified of Myers' first lien. However, there was remaining $70,197.66 of the amount of the contract with Jordano of $207,986.65. This amount was not paid to Jordano because Jordano had not even completed all of the work for which payment was made. Since Jordano had received more payment than work completed, nothing was due Jordano at the time it was removed from the job. ODOT's contract with the new contractor required payment of substantially more than the remaining $70,197.66 (actually $229,557) to complete the work Jordano should have completed. There is no evidence in the record, however, that Myers' subcontracted work was not properly completed.

The trial court granted Myers' motion for summary judgment against ODOT and ordered payment by ODOT to Myers of the total of the two liens, which was slightly less than the amount retained by ODOT of the original contract price prior to its new contract with another contractor to complete the job.

In appellant's first assignment of error, it argues that the court of common pleas erred when it allowed Myers to recover on its liens since ODOT owed no subsequent payments to Jordano.

The Ohio Legislature has established a statutory scheme whereby any subsequent payments to a contractor must be retained by the owner after a subcontractor files a notice of lien pursuant to R.C. 1311.26 *et seq.*

In R.C. 1311.26, a subcontractor who performs road or public improvements under an agreement with the contractor may, not more than four months after the subcontractor's performance, file with the owner an itemized statement of its labor performed and materials furnished. R.C. 1311.28 states that an owner, upon receiving the subcontractor's R.C. 1311.26 notice, shall detain from the principal contractor all *subsequent payments* as do not in the aggregate exceed the subcontractor's claims and place them in an escrow account. R.C. 1311.31 requires that an owner shall, or a lien claimant may, furnish the principal contractor with a copy of the R.C. 1311.26 notice. The principal contractor must give notice of its intention to dispute the claim within ten days of its receipt. If it does not within ten days, then it has assented to the notice's correctness. The amount in escrow shall be used to pay claims that have been filed. R.C. 1311.32 provides that the duty to pay lien claimants may be enforced by a mandamus action against the owner. A subcontractor may recover against the owner the whole or a pro rata amount of his claim, "not exceeding in any case the balance due to the principal contractor."

In *Lee Turzillo Contracting Co.* v. *Cincinnati Metro. Housing Auth.* (1967), 10 Ohio St. 2d 5, 39 O.O. 2d 3, 225 N.E. 2d 255, the Supreme Court held, as follows, in paragraph one of the syllabus:

"Section 1311.26 *et seq.*, Revised Code (in effect prior to September 30, 1963), afford a species of garnishment to protect a subcontractor, laborer or materialman against the risk of loss of payments due him should such payments reach his principal contractor in whose hands they may be subject to the creditors or caprice of the latter."

The second paragraph of the syllabus states:

"Compliance with Section 1311.26, Revised Code, constitutes a 'stop notice' to the owner by virtue of Section 1311.28, Revised Code, to prevent the payment of moneys due to the principal contractor; and a subcontractor, laborer, or materialman thereby secures an assignment pro tanto of the moneys *remaining due from the owner to the principal contractor,* with the right to control and direct its payment to himself. * * *'' (Emphasis added.)

As can be seen by the statutory scheme and the case law cited, the subcontractor can only put a lien on payments that the owner still owes the contractor. In the case at bar, the subcontractor (Myers) requested that ODOT put a lien on subsequent payments to the contractor (Jordano), but ODOT had already paid the contractor fully (and probably more than fully) for its performance which was not completed. This performance for which payment had already been made included work done for Jordano by Myers.

Myers does not address the issue of subsequent payments to Jordano, of which there were none, but instead relies on the trial court's ruling which states that, "if the subcontractor has performed its duties on a project, and filed its notice of lien before the allocated funds are expended, then the State has a duty to pay that lien." Thus, since there was approximately $70,000 unpaid in regard to the uncompleted contract between ODOT and Jordano, the trial court found that ODOT has "an obligation to pay" Myers from "the residual funds not paid to Jordano."

As authority for this rationale, the trial court relied on *Davey Tree Farm* v. *Middletown* (July 22, 1985), Butler App. No. CA84-06-073, unreported. In *Davey Tree Farm,* the court granted judgment in favor of a subcontractor on his lien even though the amount remaining of the original contract price was not due or paid to the contractor because it was insufficient to complete the unfinished work.

However, the court in *Davey Tree Farm* relied on the fact that the city admitted in its answer that "[p]laintiff has a lien for said amount on public funds of the City of Middletown designated for said construction project." *Id.* at 3. Therefore, citing *Gerrick* v. *Gorsuch* (1961), 172 Ohio St. 417, 17 O.O. 2d 353, 178 N.E. 2d 40, with approval, the court said that the city was bound by its pleading, could not contest it, and had to pay the lien placed on the project's funds.

As additional support for its holding, the *Davey Tree Farm* court said that, even if there was no money in a particular construction project fund after the city hired and paid a new contractor to finish the job, the subcontractor still had a valid lien against the funds that were available when the lien was filed.

The *Davey Tree Farm* court did not discuss the provision of R.C. 1311.32, in regard to remedies for R.C. 1311.26 actions, that the lien claimant's recovery against the owner may not exceed in any case the balance due to the general contractor. It is this provision of R.C. 1311.32 which we feel is controlling.

Myers also relies on *State, ex rel. Dinneen Excavating Co.,* v. *Skyes* (Dec. 31, 1986), Franklin App. No. 84AP-885, unreported.[1] *Dinneen* is inapplicable because in that case, unlike the case at bar, the owner admitted that it was holding funds owed to the principal contractor in an escrow account. The issues in *Dinneen* concerned: (1) which party claimed the money in escrow, (2) the priority of the parties,

---

[1] Reporter's Note: This decision was affirmed by the Ohio Supreme Court on December 14, 1988, at 40 Ohio St. 3d 84, 531 N.E. 2d 1309.

and (3) what forms of action should be used by the parties to pursue the disbursal of the money in the escrow account. Therefore, *Dinneen* is not relevant to the determination herein.

Based on the statutory scheme established in R.C. 1311.26 *et seq.* and applicable case law, a subcontractor is not entitled to recover on liens filed against the owner when the owner has paid the contractor the entire amount due it prior to the time the liens are filed and when no further payments are made or due thereafter.

Therefore, the trial court erred when it allowed Myers to recover on its filed liens when ODOT owed no subsequent payments to the contractor.

Appellant's first assignment of error is sustained.

In ODOT's fourth assignment of error, which is related to its first assignment of error, it argues that the trial court erred by granting a summary judgment in the subcontractor's favor when there were genuine issues of material fact concerning: (1) the amount owed to the subcontractor by the contractor, (2) the validity of filed liens, and (3) the amount of subsequent payments due from ODOT to the contractor.

Pursuant to Civ. R. 56(C), summary judgment may be rendered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment cannot be rendered unless reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made.

As pertains to the third point in this assignment of error, this court has found as to appellant's first assignment of error that a subcontractor is only entitled to subsequent payments made by the state to the contractor or due to the contractor after the subcontractor's notice of lien is filed.

ODOT proffered an affidavit from a bureau of accounting officer who stated that ODOT held no funds due the prime contractor. The subcontractor in its pleadings, affidavits, and brief did not dispute this. Therefore, the lower court erred when it granted the subcontractor summary judgment on this issue.

The disposition of the first and fourth assignments of error render moot the other assignments of error. Since ODOT had no responsibility to pay the liens, the validity and genuineness of the liens are no longer in issue. The trial court's jurisdiction to award money damages and the issue of prejudgment interest are also moot. Hence, assignments of error two, three, five, and six are overruled.

Assignments of error one and four are sustained, and assignments of error two, three, five, and six are overruled. The judgment of the trial court is reversed. The cause is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY and YOUNG, JJ., concur.