DECISION AND JUDGMENT
{¶ 1} Defendant-appellant, Chas. F. Mann Painting Co. ("Mann"), appeals the August 31, 2007 judgment of the Ottawa County Court of Common Pleas which granted summary judgment to plaintiffs-appellees, S.E. Johnson Cos., Inc. and The Shelly Company (collectively referred to as "SEJ".) Because we find that material issues of fact remain, we reverse the trial court's judgment. *Page 2 
 {¶ 2} The facts of this case are as follows. In December 2001, the Ohio Department of Transportation ("ODOT") awarded a contract to SEJ for improvements to the Port Clinton, Ottawa County, Ohio, S.R. 163 bridge. The contract bid price was $1,823,276.70. Thereafter, on April 16, 2002, SEJ subcontracted with Mann to clean, paint, and seal portions of the bridge pursuant to bid line items: 0024, 0025, 0026, 0027, and 0033.[1] The subcontract price was $94,074 and incorporated the terms of the SEJ/ODOT contract.
 {¶ 3} In June 2002, prior to the start of the work, SEJ contacted Mann and requested that Mann blast the bridge handrail for inspection and coat the good steel with zinc primer. On June 18, 2002, Mann, through its project manager Michael O'Hearn, contacted SEJ via email about the request. O'Hearn stated:
 {¶ 4} "Doug, as we discussed, we did not figure or intend to blast the rails twice. Clean for inspection was not under the painting scope. We could minimize additional cost by blasting and priming replacement steel prior to its installation . . . What about lane closure??"
 {¶ 5} The next day, SEJ's project manager, Doug Stanton, replied:
 {¶ 6} "Mr. Thierry wants it blasted we need you to blast it we will claim [the] clean for inspection at the end of the contract keep those cost[s] separate we should be able to blast prime the replacement steel to keep costs down. sej will do traffic closure" *Page 3 
 {¶ 7} In October 2002, Mann began the blast for inspection work which included mobilization and demobilization to permit traffic flow; it was completed in December 2002. The entire painting project was completed on October 22, 2003. On December 2, 2003, Mann faxed SEJ a note regarding its intent to file a claim for "additional costs incurred by the inspection blast."
 {¶ 8} After discussion between the parties, on April 15, 2004, SEJ submitted Mann's claim to ODOT. On June 25, 2004, ODOT denied the claim "at Step 1 of the Dispute Resolution Process" stating:
 {¶ 9} "In accordance with the Dispute Resolution Process on page 18 of the proposal, the contractor is required to give the project engineer written notice within two working days of the occurrence of the circumstance of dispute. The written notice in this instance was not given for approximately 18 months after the occurrence. Additional information was also requested upon receipt of the written notice; however, only a portion of the information has been provided. In a phone conversation last week, you stated that the sub-contractor was not going to provide any more information regarding the claim."
 {¶ 10} In the interim, Mann, on February 17, 2004, filed an attested account lien against the project in the sum of $198,823.68. On February 19, 2004, SEJ was sent notice of the claim and, pursuant to R.C. 1311.31, was given 20 days to contest the claim. ODOT stated that "[i]f such notice is not received in writing to the above address, it is accepted that you have assented to its correctness. Therefore, consideration will be given *Page 4 
to release the detained lien funds directly to the claimant." SEJ, though contending that it "misplaced" the claim, does not dispute that it never responded to the letter. Thereafter, on March 18, 2004, ODOT notified SEJ as follows:
 {¶ 11} "Due to the fact that you have failed to notify ODOT of a dispute on Lien #2943 within the allotted time period (20 days), we are obligated by the Ohio Revised Code to release any future payments on the Project directly to the claimant up to the amount of the lien."
 {¶ 12} Subsequently, Mann was paid the full amount of the attested account lien. SEJ requested that Mann return the $198,823.68 alleged "overpayment" arguing that the subcontract prohibited Mann from filing the lien and that Mann was entitled to payment only if SEJ recovered the sum. Mann refused to return the funds and SEJ commenced the instant action.
 {¶ 13} SEJ's June 8, 2005 complaint alleged that Mann breached the subcontract by accepting payments that exceeded the amount due and owing and by filing an attested account claim despite the contractual prohibition against such claims. Based on these averments, SEJ also asserted claims for promissory estoppel, conversion of funds, recoupment of funds, unjust enrichment, and requested declaratory relief. SEJ included a claim for attorney fees.
 {¶ 14} On July 29, 2005, Mann filed its answer, counterclaim and third-party complaint. Mann joined The Shelly Company as a party alleging that in May 2003, S.E. Johnson and its subsidiaries were sold and merged with The Shelly Company. Mann *Page 5 
alleged that SEJ violated Ohio's Prompt Pay Act, R.C. 4113.61, by failing to pay Mann for the additional work within ten days of SEJ receiving payment. Mann further alleged fraud, breach of an express or implied contract, and unjust enrichment. Mann requested that the court award punitive damages and attorney fees.
 {¶ 15} On February 15, 2007, SEJ and Mann both filed motions for summary judgment. On August 31, 2007, the trial court granted SEJ's motion for summary judgment. The court held that Mann breached the subcontract because it agreed to seek payment through the ODOT claims process and it agreed to allow SEJ to act on its behalf. The court found that the "pay-if-paid" provision did not violate R.C. 4113.62(C). The court further concluded that the payment on the attested account claim had not been earned because the extra work was included in the base price of the contract between ODOT and SEJ. Finally, the court found that because Mann breached the subcontract, its claims for fraud, punitive damages, and unjust enrichment were without merit. This appeal followed.
 {¶ 16} Appellant now raises the following four assignments of error:
 {¶ 17} "I. FIRST ASSIGNMENT OF ERROR: The trial court erred in finding that the abrasive blasting for steel inspection and rehabilitation work Appellant Chas. F. Mann Painting Co., performed was within the scope of the work of the subcontract between itself and Appellee S.E. Johnson, Inc. *Page 6 
 {¶ 18} "II. SECOND ASSIGNMENT OF ERROR: The trial court erred in finding that Appellant Chas. F. Mann Painting Co. breached it subcontract with Appellee S.E. Johnson, Inc.
 {¶ 19} "III. THIRD ASSIGNMENT OF ERROR: The trial court erred in not dismissing Appellee S.E. Johnson, Inc.'s claims as a matter of law under R.C. § 1311.31.
 {¶ 20} "IV. FOURTH ASSIGNMENT OF ERROR: The trial court erred in awarding interest and attorney fees to Appellee S.E. Johnson, Inc."
 {¶ 21} In Mann's first assignment of error it contends that the trial court erred when it determined that the abrasive blasting for steel inspection and rehabilitation work was provided for in the subcontract. Specifically, the trial court found that ODOT Supplemental Specification 815, which provided that "[a]ll steel to be painted shall be blast cleaned," and which was incorporated into the subcontract, covered the work that Mann claimed was extra.
 {¶ 22} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day *Page 7 Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ. R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt,75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports the motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E).
 {¶ 23} At issue in Mann's first assignment of error is the interpretation of ODOT Supplemental Specification 815 ("Spec. 815") which the trial court determined included the abrasive blast work in dispute. Mann asserts that a plain reading of Spec. 815 reveals that the blasting prior to painting cannot be interpreted to include the "blast for inspection" work that was requested in SEJ's June 19, 2002 email.[2]
 {¶ 24} Spec. 815 provided, in relevant part:
 {¶ 25} "815.03 Quality Control. Quality control will consist of the following items:
 {¶ 26} "* * *.
 {¶ 27} "Quality Control Points (QCP) PURPOSE *Page 8 
 {¶ 28} "* * *.
 {¶ 29} "4. Abrasive Blasting Blasted surface to receive paint
 {¶ 30} "* * *.
 {¶ 31} "D. Abrasive Blasting (QCP #4)
 {¶ 32} "* * *
 {¶ 33} "All abrasives and residue shall be removed from all surfaces to be painted. All steel blast cleaning in any one day shall be kept dust free and prime coated the same day. * * *."
 {¶ 34} "815.14 WORK LIMITATIONS. Abrasive blasting and painting shall be done between April 1 and October 31."
 {¶ 35} We note that contracts are to be interpreted to give "[c]ommon words * * * their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 36} As set forth in Spec. 815, the steel was required to be blasted prior to painting. However, the Spec. 815 clearly states that the abrasive blasting and painting was required to done from April through October. In the present case, in June 2002, SEJ requested that Mann blast the steel for inspection and that SEJ would make a later claim for the additional costs. It is undisputed that the blast for inspection work began in October 2002 and was completed in December 2002. Thereafter, the painting project began in the spring of 2003, and was completed on October 22, 2003. Based on our *Page 9 
interpretation of Spec. 815 and the Civ. R. 56(C) evidence presented by the parties, we find that a genuine issue of material fact remains regarding the scope of the abrasive blast work as contracted by the parties. Accordingly, we find that appellant's first assignment of error is well-taken.
 {¶ 37} Mann's second assignment of error disputes the trial court's finding that it breached the terms of the subcontract by: (1) filing a contested account claim; (2) failing to follow sub-contractual notice procedures; and (3) failing to return payments made to Mann by ODOT.
 {¶ 38} Relevant to this case are the dispute resolution provisions contained in the contract and the subcontract.
 {¶ 39} The "Dispute Resolution" provision of the subcontract provides, in part:
 {¶ 40} "In case of any disputes between Subcontractor and Contractor, Subcontractor shall be bound to Contractor to the same extent that Contractor is bound to Owner by the terms if the Contract Documents and by any and all decisions or determinations made thereunder by the party or board so authorized in the Contract Documents. * * *. Contractor agrees to present to the Owner, in Contractor's name, all of Subcontractor's claims for additional monetary compensation or time extension; and to further invoke, on behalf of Subcontractor, those provisions in the Contract Documents for determining disputes. * * *."
 {¶ 41} The subcontract further provides, under the "Claims or Liens Filed Against the Project" provision: "Subcontractor shall not file, and waives any right to file, any *Page 10 
mechanic's liens or any claims or attested accounts against funds, either on the property of the Owner or against the monies due or to become due from the Owner to the Contractor, unless enforcement of such provision is prohibited by law."
 {¶ 42} In this assignment of error, Mann disputes the trial court's finding that it failed to follow the subcontract notice procedure for claims. Specifically, the court found that pursuant to section 13, "Changes in the Work," of the subcontract. This section provides that when the contractor orders, the subcontractor may make changes in the work which are within the "general scope" of the subcontract. The section further provides that within 14 days of the order, the subcontractor shall submit a quote for the increased work. Additionally, the section states:
 {¶ 43} "In the event Subcontractor fails to submit a quotation within the time limits set forth herein, Contractor shall prepare a quotation with respect to the changed work proposing an estimated amount for the increase or decrease in the Subcontract Price for the changed work, and Subcontractor shall be bound by such estimate and shall be deemed to have waived any right to propose, demand, or receive a different amount."
 {¶ 44} The contract between SEJ and ODOT further provides:
 {¶ 45} "Documentation substantiating force account work shall be submitted to the District office within 30 days of completion of the work. * * *. The contractor is asked and directed to cooperate in this effort. If the requested submittal is not received within the desired time period, the District will proceed toward finalization of the project without it." *Page 11 
 {¶ 46} In the present case, the June 18 and 19, 2002 emails between the parties can be interpreted as SEJ's order for a change in the subcontract. At that point, Mann was to submit a quotation of the increased costs. However, if Mann failed to submit a quote, SEJ was then required to prepare a quotation for the abrasive blasting for inspection work and then submit that quotation to ODOT. Because we have concluded that issues of fact remain as to whether the abrasive blasting for inspection and rehabilitation work was, in fact, extra, we further find that issues of fact remain as to whether Mann or SEJ breached the terms of the subcontract and, by reference, the contract with ODOT.
 {¶ 47} Mann also argues that the trial court erred by disregarding R.C. 4113.62(E), when it found that Mann breached the subcontract by filing an attested account lien. R.C. 4113.62(E) provides:
 {¶ 48} "No construction contract, agreement, or understanding that makes payment from a contractor to a subcontractor or materials supplier, or from a subcontractor to a materials supplier, lower tier subcontractor, or lower tier materials supplier contingent or conditioned upon receipt of payment from any other person shall prohibit a person from filing a claim to protect rights under sections 153.56,1311.06, and 1311.26 of the Revised Code from expiring during the pendency of receipt of payment."
 {¶ 49} R.C. 1311.26 provides, in part:
 {¶ 50} "Any subcontractor, material supplier, or laborer who is performing or has performed labor or work or is furnishing or has furnished material for any public improvement provided for in a contract between the public authority and a principal *Page 12 
contractor, and under a contract between the subcontractor, material supplier, or laborer and a principal contractor or subcontractor, at any time, not to exceed one hundred twenty days from the performance of the last labor or work or furnishing of the last material, may serve the public authority an affidavit stating the amount due and unpaid for the labor and work performed and material furnished, when the last of the labor or work was performed and when the last of the material was furnished with all credits and setoffs thereon, * * *."
 {¶ 51} Finally, R.C. 1311.31 provides, in part:
 {¶ 52} "The public authority, upon the receipt of the affidavit referred to in section 1311.26 of the Revised Code shall, or the claimant or his agent, in the name of the public authority, may serve the principal contractor with a copy thereof, within five days after the public authority receives it, together with a notice that the principal contractor must give notice of his intention to dispute the claim within twenty days. * * *. If the principal contractor fails within twenty days after receipt of the affidavit to serve to the public authority written notice of his intention to dispute the claim, he has assented to its correctness, provided that within twenty days after receipt by any subcontractor of a copy of the affidavit, the subcontractor may serve the notice of intention to dispute on behalf of the principal contractor. * * *."
 {¶ 53} Based on a plain reading of the above-quoted provisions, we do agree that the trial court erred when it held that Mann was precluded from filing an attested account claim because Mann agreed to seek payment through the ODOT claims process. We *Page 13 
reach this conclusion based largely on SEJ's failure to contest the lien pursuant to R.C. 1311.31. However, whether the sum awarded to Mann was earned is an issue to be resolved by the trier of fact. See Lee TurzilloContracting Co. v. Cin. Met. Hous. Auth. (1967), 10 Ohio St.2d 5.
 {¶ 54} Finally, we conclude that because material issues of fact remain, the trial court erred when it held that because Mann breached the terms of the subcontract it wrongfully failed to return the funds paid on the attested account claim. Appellant's second assignment of error is well-taken.
 {¶ 55} In Mann's third assignment of error, it asserts that the trial court erred by failing to dismiss SEJ's claims under R.C. 1311.31. Mann argues that by failing to dispute the claim, SEJ assented to the correctness of the claim as a matter of law. Conversely, SEJ argues that the lien merely secured any amounts that were due and owing to Mann and, because the sum was not earned, it was not owed. In other words, because the work was provided for in the subcontract it was not "extra" and no additional sums were owed.
 {¶ 56} Based upon our determination that genuine issues of fact remain regarding the scope of the subcontract, we find that Mann's third assignment of error is not yet ripe for review and is not well-taken.
 {¶ 57} Mann's fourth and final assignment of error disputes the trial court's award of interest and attorney fees to SEJ. Based on our disposition of Mann's first and second assignments of error, we find that the assignment of error is well-taken. *Page 14 
 {¶ 58} On consideration whereof, we find that substantial justice was not done the party complaining and the judgment of the Ottawa County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerks' expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] These items provided for: field painting; span repairs/centerlock; railing system; sidewalk plate, system; trunnion support towers. They also provided for the sealing of concrete surfaces.
[2] SEJ contends that because Mann did not raise the arguments relative to Spec. 815 in opposition to SEJ's motion for summary judgment, they may not be raised on appeal. We disagree. Spec. 815 is before us and we are required to review it de novo. Further, in Mann's project manager Michael O'Hearn's February 13, 2007 affidavit (attached to Mann's motion for summary judgment) he stated: "The requirements for abrasive blasting for steel for inspection is different and for more extensive, than the blasting required under Supplemental Specification 815 for painting." *Page 1